No. 25-7646

# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘 𝖋𝖔𝖗 𝖙𝖍𝖊 𝕹𝖎𝖓𝖙𝖍 𝕮𝖎𝖗𝖈𝖚𝖎𝖙

PRESTON BERMAN,
*Plaintiff-Appellant*,

v.

PSYCHIATRIC SECURITY REVIEW BOARD; ALISON BORT, *in her official capacity as Executive Director of the Oregon Psychiatric Security Review Board*, *Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Oregon
No. 6:24-cv-01127-MTK
Hon. Mustafa T. Kasubhai, District Judge

## OPENING BRIEF OF PLAINTIFF-APPELLANT

PRESTON BERMAN
2600 Center St. NE
Salem, OR 97301-2669
Telephone: (503) 947-3764
*Plaintiff-Appellant appearing Pro Se*

**TABLE OF CONTENTS**

TABLE OF CONTENTS.....................................................................................2

TABLE OF AUTHORITIES............................................................................. 3

I. JURISDICTIONAL STATEMENT....................................................................4

II. STATEMENT OF ISSUES PRESENTED........................................................ 5

III. STATEMENT OF THE CASE......................................................................6

    A. GEI Commitment and PSRB Jurisdiction Are Civil, Not Punitive................ 6

    B. Conditional Release Does Not End PSRB Custody....................................... 8

    C. The 2025 Rule Changes, Voluntary Cessation, and the Feb 26 PSRB
    Hearing............................................................................................................ 9

    D. District Court Proceedings and What Appellant Actually Sought................ 11

IV. SUMMARY OF ARGUMENT....................................................................... 14

V. STANDARD OF REVIEW............................................................................17

VI. ARGUMENT.............................................................................................. 18

    Argument I. The district court wrongly held these claims are habeas-only....... 18

        I.A. Governing test: habeas is exclusive only when success necessarily
        implies immediate or speedier release..................................................18

        I.B. Appellant's requested relief is procedural and prospective....................20

        I.C. The Order's key mistake was treating an alternative discharge
        request as converting the entire case into habeas.........................................22

        I.D. Appellant's injuries exist independent of hospital placement,
        so success does not necessarily end custody................................................. 23

    Argument II. Even assuming mixed relief, severance or stay was required,
    not wholesale dismissal................................................................................... 24

        II.A. Mixed pleadings require courts to preserve non-habeas claims........... 24

        II.B. The proper remedy was severance and, at most, a stay of any
        habeas slice...................................................................................................26

    Argument III. The exhaustion dismissal is wrong on law and facts..................27

        III.A. Habeas exhaustion does not apply to ADA or § 1983 procedural
        claims...........................................................................................................27

        III.B. Even if exhaustion mattered, Appellant pursued state
        judicial review............................................................................................. 28

        III.C. The minimum correct remedy would be a stay, not dismissal.............29

Argument IV. Absolute immunity does not justify refusing to reach prospective relief.................................................................................30

    IV.A. Quasi-judicial immunity, at most, bars retrospective damages for adjudicative acts................................................................ 30

    IV.B. Immunity does not bar prospective declaratory relief........................ 31

    IV.C. Prospective injunctive relief is also available because Appellant challenges enforcement of an unconstitutional rule going forward.............. 31

Argument V. Merits overview for remand guidance......................................... 33

    V.A. Substantive due process and ORS 161.346 require current disorder-linked danger, and OAR 859-030-0010(3)(b)(B) undermines that nexus.................................................................................33

    V.B. The ADA integration mandate under Olmstead is violated by continued institutionalization or jurisdictional segregation........................ 38

VII. CONCLUSION AND RELIEF REQUESTED............................................... 39

VIII. STATEMENT OF RELATED CASES........................................................ 41

IX. ADDENDUM..................................................................................43

## <u>TABLE OF AUTHORITIES</u>

**United States Supreme Court**

*Ex parte Young*, 209 U.S. 123 (1908)............................................... 16, 30

*Foucha v. Louisiana*, 504 U.S. 71 (1992).................................10, 34, 35, 36

*Heck v. Humphrey*, 512 U.S. 477 (1994)..................................... 19, 20, 22

*Olmstead v. L.C.*, 527 U.S. 581 (1999)...........................................38, 39

*Patsy v. Bd. of Regents*, 457 U.S. 496 (1982)................................... 16, 27

*Skinner v. Switzer*, 562 U.S. 521 (2011)......................................... 15, 18

*Wilkinson v. Dotson*, 544 U.S. 74 (2005)...................15, 18, 19, 21, 23, 25

**Ninth Circuit Court of Appeals**

*Bogovich v. Sandoval*, 189 F.3d 999 (9th Cir. 1999)....................... 15, 16, 18, 21, 28

*Huftile v. Miccio-Fonseca*, 410 F.3d 1136 (9th Cir. 2005) (applying *Heck* to civil detainee's SVPA damages/declaratory claims, but allowing prospective injunctive relief to proceed)...............................................................19, 20

*Nettles v. Grounds*, 830 F.3d 922, 934–35 (9th Cir. 2016) (en banc)........................................................................ 15, 19, 25

*Trimble v. City of Santa Rosa*, 49 F.3d 583 (9th Cir. 1995)...............6, 15, 25, 26, 27

**Other Courts**

*Berman v. Kotek*, Case No. 6:23-cv-01497-AA (D. Or. 2023)...................................7

*Berman v. Psychiatric Security Review Board*, No. A187609
(Or. Ct. App. 2025)............................................................................16, 28, 41

*Drew v. Psychiatric Sec. Review Bd.*, 322 Or. 491, 909 P.2d 1211 (1996)..............37

*Haidar v. Psychiatric Sec. Review Bd.*, 324 Or. App. 129 (2023)..........................36

*Norgren v. Psychiatric Sec. Review Bd.*, 344 Or. App. 617 (2025)........................37

*Walters v. Psychiatric Sec. Review Bd.,* 341 Or. App. 41, 574 P.3d 49 (2025)..36, 37

# I. JURISDICTIONAL STATEMENT

This action arises under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., and the Fourteenth Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983. The United States District Court for the District of Oregon had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

Plaintiff-Appellant Preston Berman is subject to the jurisdiction of the Oregon Psychiatric Security Review Board (PSRB) under ORS 161.336 et seq., a civil commitment scheme. This appeal challenges the district court's Opinion and Order granting summary judgment to Defendants on procedural grounds and dismissing Appellant's ADA and constitutional claims without prejudice. Appellant seeks only prospective declaratory and injunctive relief requiring the PSRB to apply constitutionally valid standards and procedures. Appellant does not seek damages in this appeal, and any prior request for damages is expressly withdrawn and

severed. While Appellant previously sought discharge as alternative relief in district court, they abandon any request for a federal release order on appeal, and challenge only the unlawful standards and procedures that govern future PSRB jurisdiction.

On November 3, 2025, the district court entered an Opinion and Order granting summary judgment to Defendants and a final judgment dismissing the action without prejudice. That judgment disposed of all parties and claims and is appealable under 28 U.S.C. § 1291. A timely notice of appeal was filed. This Court therefore has appellate jurisdiction.

## II. STATEMENT OF ISSUES PRESENTED

1. Whether the district court erred, at summary judgment, in holding that Appellant's ADA and § 1983 claims must proceed only through habeas corpus based on alternative requests for jurisdictional discharge and other release-type remedies in the Amended Complaint and preliminary-injunction briefing, where the gravamen of the action is a Title II and due-process challenge to PSRB's continued jurisdiction and amended "dangerousness" standards, and on appeal Appellant seeks only forward-looking declaratory and injunctive relief that would not necessarily require immediate release or otherwise invalidate the fact or duration of custody.

2. Whether, at minimum, the district court was required to sever any habeas-type request for immediate discharge and adjudicate the remaining non-habeas ADA and § 1983 procedural claims, rather than dismiss the entire action without prejudice under *Trimble*.

3. Whether the district court erred in dismissing for failure to exhaust state remedies where ADA and § 1983 procedural claims are not subject to habeas exhaustion and, in any event, Appellant pursued state judicial review of the same PSRB order.

4. Whether absolute immunity, even if it bars retrospective damages for quasi-judicial PSRB decisions, does not bar prospective declaratory and injunctive relief aimed at stopping ongoing enforcement of unconstitutional standards and rules.

## III. STATEMENT OF THE CASE

### A. GEI Commitment and PSRB Jurisdiction Are Civil, Not Punitive

Appellant Preston Berman has been under the jurisdiction of the Oregon Psychiatric Security Review Board (PSRB) since December 2010 following a Guilty Except for Insanity (GEI) adjudication under ORS 161.336. GEI jurisdiction in Oregon is a civil commitment and treatment regime, not a criminal sentence. Its purpose is care, treatment, and public safety under civil due process standards.

6

The State of Oregon has repeatedly recognized this civil character. In *Berman v. Kotek*, Case No. 6:23-cv-01497-AA (D. Or. 2023), the Oregon DOJ described Oregon's GEI framework as 'a separate, unified, and exclusive scheme' that is non-punitive and governed by Due Process, not Eighth Amendment analysis. (Defs.' Mot. to Dismiss, ECF No. 14, Jan. 16, 2024.) In that filing, Senior Assistant Attorneys General Craig M. Johnson and Michelle Enfield relied on precedent recognizing that Oregon's GEI system is a civil regime intended for care and treatment rather than punishment. That position aligns with longstanding precedent holding that the rights of involuntarily committed people arise under the Fourteenth Amendment's Due Process Clause and that civil commitment is regulatory and protective, not penal.

This civil foundation matters for the procedural posture of this appeal. Appellant's claims mirror procedural challenges allowed under § 1983 and Title II of the ADA. Appellant is not asking this Court to overturn a criminal judgment or to order immediate release by federal fiat. Appellant challenges the legality of the standards and procedures the PSRB uses to continue civil jurisdiction. Success would require a new lawful PSRB review under constitutional standards, not an automatic termination of custody. That framing places this action outside the "core habeas" category reserved for claims that necessarily negate custody itself.

7

### B. Conditional Release Does Not End PSRB Custody

PSRB jurisdiction continues in full force even when an individual is on conditional release. Conditional release does not dissolve custody. It shifts the form of custody from a locked institution to a community setting under PSRB control.

While on conditional release, Appellant remains subject to mandatory curfews, travel and residency restrictions, financial oversight, medication compliance conditions, driving bans, frequent reporting requirements, and the PSRB's unilateral power to immediately revoke release and return the person to inpatient confinement. These restraints are not incidental. They are the living form of PSRB custody. This is the factual hinge of the case. The injuries Appellant challenges arise from PSRB jurisdiction itself, not from the physical placement in a hospital. The same allegedly unlawful standards prolong custody whether Appellant is at Oregon State Hospital, an SRTF, or living in the community on conditional release. Because the harm is jurisdiction-based and persists independent of location, the claims seek procedural and declaratory correction of custody standards rather than direct release.

**C. The 2025 Rule Changes, Voluntary Cessation, and the Feb 26 PSRB Hearing**

This case arises from a continuing series of PSRB rule changes that weakened the required relationship between a qualifying mental disorder and present dangerousness. Appellant's First Amended Complaint challenged the 2024 amendments to OAR 859-010-0005 (now recodified in substance at OAR 859-030-0010) because they diluted that nexus and allowed the PSRB to continue jurisdiction without making an individualized finding that a qualifying disorder meaningfully accounts for current dangerousness. Those challenged standards governed Appellant's February 26, 2025 review hearing.

At that February 26 hearing, Appellant's treating psychiatrist, Dr. James Peykanu, testified that Appellant's qualifying disorder was well controlled and that Appellant's current risk had been drastically reduced. A February 2025 Violence Risk Assessment rated Appellant at low current risk. Despite this record, the PSRB's April 4, 2025 order continued jurisdiction based on the absence of a completed community plan and speculative concerns about potential future risk if supervision were removed. The Board did not identify individualized evidence that Appellant was presently dangerous because of a qualifying mental disorder.

9

After the hearing, and while this case was pending, the PSRB issued additional rule actions rather than restoring the prior lawful standard. On March 10, 2025, it filed Temporary Administrative Order PSRB 1-2025 and recodified the same loosened-nexus standard as OAR 859-030-0010. The operative text now provides: "A qualifying mental disorder may combine with another condition to render the person a substantial danger to others and **need not be sufficient on its own to render the person a substantial danger to others.**" This language carries forward the same defect Appellant challenged under OAR 859-010-0005. It permits continued PSRB jurisdiction even when non-qualifying factors are the primary drivers of any residual risk and the qualifying disorder plays only an incidental role, so long as the disorder is present in some reinforcing way. Subsequent 2025 amendments retained that core standard.

Over successive rulemakings, PSRB standards have drifted away from the substantive framework reflected in *Foucha* and ORS 161.346. Under the prior version of the rule OAR 859-010-0005(8) (PSRB 1-2023, amend filed Apr. 19, 2023, eff. Apr. 21, 2023), "Danger"; "Substantial Danger"; or "Dangerousness" meant a "demonstration or previous demonstration of intentional, knowing, reckless or criminally negligent behavior which places others at risk of physical injury **because of the person's qualifying mental disorder.**" What began as a requirement that current dangerousness be grounded in an active qualifying

10

disorder has been diluted into a framework that treats a historical or latent diagnosis as sufficient so long as any non-qualifying risk factor can be labeled as "combining" with it.

These serial amendments and renumbering events do not moot Appellant's claims. They are voluntary cessation. The PSRB has repeatedly preserved the same weakened causal-nexus rule while shifting its form and label during ongoing litigation. Because the challenged rule remains in effect and continues to be applied to Appellant in all future PSRB proceedings, federal review is required to stop the ongoing use of a standard that erodes the constitutionally required connection between current mental illness and dangerousness.

### D. District Court Proceedings and What Appellant Actually Sought

Plaintiff filed this action in July 2024 in federal court under Title II of the ADA and § 1983 after the PSRB adopted and applied rule changes that weakened the required causal link between a qualifying mental disorder and current dangerousness. In the original Complaint, the prayer for relief asked the court to declare that PSRB had violated Title II and the Fourteenth Amendment and to enjoin discriminatory segregation by ordering PSRB to "develop and implement policies, practices, Oregon Administrative Rules, and programs that ensure that Mr. Berman, and similarly situated individuals, receive services, programs, and

11

activities in the most integrated setting appropriate to their needs additionally preserving their 14th Amendment rights to Due Process." The original pleading did not request monetary damages. It framed the case as a forward looking challenge to PSRB's standards and Oregon Administrative Rules that needed to be constitutionally sound. Plaintiff later filed an Amended Complaint that retained this standards based challenge but, in response to evolving proceedings, added a damages claim and more specific alternative discharge language. Although the Amended Prayer for Relief emphasized discharge, the body of the Amended Complaint repeatedly framed the injury as PSRB's use of a non-causal dangerousness rule and requested declaratory and injunctive relief to end that standards-based violation by requiring application of ORS 161.346(1)(a)'s proper causal-nexus test. *See*, for example, Amended Complaint § E 92 (alleging that PSRB's amendments to OAR 859-010-0005 and successor rules allow indefinite detention without the required causal link) and 111 (alleging that continued jurisdiction "without a causal nexus between his mental condition and current substantial dangerousness" violates due process and seeking declaratory and injunctive relief to end that violation).

Plaintiff never challenged the original GEI adjudication and instead challenged the legality of the PSRB's ongoing jurisdiction when the governing rules allow custody to continue without present, disorder linked danger.

The district court converted the parties' preliminary-injunction briefing into cross-motions for summary judgment, granted Defendants' motion, and denied Appellant's cross-motion. In its Opinion and Order, the court (1) held that Defendants were entitled to absolute quasi-judicial immunity from Appellant's claim for damages; (2) recharacterized Appellant's remaining ADA and due process claims as habeas in nature because they sought "immediate discharge" or conditional release to Florida; (3) concluded that those habeas-type claims were unexhausted because Appellant had not alleged seeking review in the Oregon Court of Appeals; and (4) dismissed the case without prejudice.

The preliminary-injunction filings followed the same structure. Plaintiff sought immediate prospective relief because the PSRB was continuing jurisdiction using an unconstitutional rule and without individualized, current, disorder-linked evidence of danger. The motion asked the court to stop the ongoing violation, require the PSRB to comply with the lawful discharge standard, and, in light of that standard, to order jurisdictional discharge. The argument focused on the illegality of the decision-making framework and the absence of current disorder-linked danger, not on relitigating the original GEI adjudication.

The district court's Order characterized the case as seeking only "immediate discharge" or "conditional release to Florida," and treated that characterization as

13

converting the entire suit into habeas. That description was incomplete. The references to discharge and to a Florida placement appeared as remedies that would follow once the PSRB applied constitutional standards and the ADA's integration mandate. Florida was identified as the most integrated setting available to Plaintiff because it is where Plaintiff's primary support system lives and where Plaintiff has previously lived safely under PSRB-approved travel.

Finally, Plaintiff clarifies for this appeal that no damages are sought. Any prior damages request is withdrawn and severed. The only claims pressed here are for prospective declaratory and injunctive relief to halt ongoing unconstitutional standards, require a lawful PSRB review, and end jurisdiction once the correct causal-nexus test is applied.

## IV. SUMMARY OF ARGUMENT

The district court misclassified this case as habeas only and dismissed without reaching the merits. Appellant does not challenge the validity of the GEI adjudication or ask for a federal order of release. From the outset, the original Complaint's prayer for relief focused on declaratory and injunctive orders requiring PSRB to develop and implement constitutionally sound Oregon Administrative Rules and related policies, not on monetary damages. The live claims challenge the standards and rules the PSRB now uses to continue civil jurisdiction, including

14

OAR 859-030-0010(3)(b)(B), and seek only prospective declaratory and injunctive relief. Success would require the PSRB to apply a lawful causal nexus standard and to provide a new review under ORS 161.346. It would not itself require immediate discharge or a shorter period of custody. Under *Wilkinson*, *Nettles*, *Bogovich*, and *Skinner*, such forward-looking civil rights and ADA claims fall outside the core of habeas because a favorable judgment would change procedures and standards, not automatically terminate custody. Although the due process theory is substantive, the relief sought is prospective and structural, not a direct federal order of release.

Even if the Court views some narrow slice of the requested relief as overlapping with habeas, that did not justify wholesale dismissal. When a pleading seeks both true release-type remedies and independent procedural or structural relief, courts must separate the two. The proper course was to sever any discrete request that would directly compel discharge, and at most dismiss or stay only that limited component. The district court instead treated an alternative discharge request as converting the entire ADA and § 1983 action into habeas and dismissed all claims without prejudice. That remedial step conflicts with *Wilkinson*, *Nettles*, and *Trimble*, which require preservation of non-habeas claims that do not necessarily imply immediate or speedier release.

15

The exhaustion ruling also cannot stand. Habeas exhaustion does not apply to ADA Title II or § 1983 claims seeking prospective declaratory and injunctive relief, as *Patsy* and *Bogovich* make clear. The exhaustion bar arose only because the district court first re-labeled the entire case as habeas. In any event, by the time of the dismissal Appellant had already filed a petition for judicial review in the Oregon Court of Appeals challenging the same PSRB order, *Berman v. Psychiatric Security Review Board*, No. A187609. That filing gave Oregon courts a full opportunity to address the legality of the PSRB's continued jurisdiction. At a minimum, the existence of that proceeding removes any factual basis for dismissing the entire federal action for non-exhaustion. The most the court could have done was stay a truly habeas-type slice while proceeding on the independent ADA and due process claims.

Finally, absolute or quasi-judicial immunity does not eliminate forward-looking relief. Appellant accepts that individual PSRB members may be immune from retrospective damages for adjudicative acts and has withdrawn damages on appeal. Immunity from damages, however, does not bar declaratory or injunctive relief directed at the ongoing enforcement of an unconstitutional rule. Under *Ex parte Young*, Appellant may seek an order declaring the current PSRB standard unlawful and prohibiting its future use, and may obtain a new jurisdictional review conducted under a constitutionally valid causal nexus standard and in compliance

16

with the ADA integration mandate. Because the district court misapplied habeas, exhaustion, and immunity doctrines to avoid adjudicating those prospective claims, the judgment should be vacated and the case remanded for a merits determination.

## V. STANDARD OF REVIEW

This Court reviews de novo the district court's grant of summary judgment and its dismissal of the action. Whether a claim sounds in habeas or may proceed under § 1983 and Title II is likewise a question of law reviewed de novo. De novo review applies to all legal questions that controlled the judgment, including the characterization of Appellant's claims as habeas in nature, the applicability of any exhaustion requirement, and whether prospective declaratory or injunctive relief is available on the pleaded facts.

In reviewing summary judgment, this Court considers the record in the light most favorable to the nonmoving party and draws all reasonable inferences in their favor. Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.

To the extent the district court made any subsidiary factual determinations, those are reviewed for clear error. But because the dismissal turned on legal

classification and procedural doctrines rather than disputed facts, the governing standard for this appeal is de novo review.

## VI. ARGUMENT

**Argument I. The district court wrongly held these claims are habeas-only.**

**I.A. Governing test: habeas is exclusive only when success necessarily implies immediate or speedier release.**

The Supreme Court draws a clear line between habeas actions and civil-rights suits. Habeas is the exclusive vehicle only when the plaintiff's success would necessarily mean immediate release from custody or a shorter period of custody. If success would instead result in new procedures, new standards, or a new decision-maker applying lawful criteria, then the claim lies outside the "core of habeas" and may proceed under Title II and § 1983. *Wilkinson v. Dotson*, 544 U.S. 74 (2005), *Bogovich v. Sandoval*, 189 F.3d 999 (9th Cir. 1999), and *Skinner v. Switzer*, 562 U.S. 521 (2011), all apply this rule. The word "necessarily" is decisive. A claim is not converted into habeas simply because success might eventually support release through later state action. The question is narrower: would a favorable federal judgment **itself** require discharge or shortened custody, or would it only require a lawful process that could still result in continued

18

jurisdiction? Only the first category is habeas-only. See *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) (claims outside habeas when success would not 'necessarily spell speedier release'); *Nettles v. Grounds*, 830 F.3d 922, 934-35 (9th Cir. 2016) (en banc) (same).

The district court itself recognized that 'reinstatement of the prior version of [the PSRB regulation] does not necessarily mean that Plaintiff would be discharged.' Order, ECF No. 41 at 2 (Dec. 9, 2024). This confirms that success on Plaintiff's claims, such as invalidating OAR 859-030-0010(3)(b)(B) or requiring lawful standards, may not necessarily result in release.

Defendants may argue that *Huftile v. Miccio-Fonseca*, 410 F.3d 1136 (9th Cir. 2005), extends *Heck* to civil commitment cases and therefore bars this suit. *Huftile* is different. There, an SVPA detainee brought a § 1983 action against an evaluator whose report was one of the two statutorily required evaluations supporting his civil commitment. Because success on his **damages and declaratory** claims would have necessarily implied the invalidity of the underlying commitment, the Ninth Circuit held those portions barred by *Heck*. At the same time, the court allowed his **prospective injunctive** claim to proceed, recognizing that forward-looking relief aimed at preventing future harm does not necessarily imply the invalidity of the existing confinement. 410 F.3d at 1140–41. Appellant here

19

brings only the kind of prospective procedural and ADA claims *Huftile* allowed to proceed, directed at ongoing standards, not the backward-looking damages or declaratory claims that *Huftile* held barred by *Heck*.

This case is different in kind. Appellant does not challenge the original GEI adjudication or the validity of the initial PSRB jurisdiction. Appellant challenges a forward-looking rule and decision-making standard that governs whether jurisdiction may continue now and in the future, after clinical stabilization. The requested relief would invalidate an unconstitutional causal-nexus rule and require a new PSRB review under lawful criteria. It would not erase the original adjudication or compel immediate release by federal order. Under the Supreme Court's habeas boundary and the Ninth Circuit's core-of-habeas framework, this type of procedural, prospective challenge falls outside *Huftile*'s bar.

### I.B. Appellant's requested relief is procedural and prospective.

Appellant's claims challenge the legality of the PSRB's decision-making standards and the rule change that removed the constitutionally required causal nexus. The operative relief sought is prospective and procedural:

1. A declaration that OAR 859-030-0010(3)(b)(B) is unconstitutional on its face and as applied because it permits continued jurisdiction without current disorder-linked dangerousness.

2. An injunction prohibiting the PSRB from applying a standard that does not ensure a sufficient causal link in Appellant's case and future cases.

3. An order requiring a new PSRB review under the constitutionally required causal-nexus standard and ORS 161.346.

That package of relief does not order release by federal fiat. At most, it requires a lawful reconsideration under valid criteria. As in *Wilkinson* and *Bogovich*, success would change the procedures and standards governing future PSRB determinations. It would not itself guarantee discharge, much less immediate discharge. The PSRB could still reach a lawful decision after a proper hearing. Because the remedy is a corrected process, not an automatic exit from custody, the claims are properly brought under § 1983 and the ADA.

To the extent Appellees contend that the Amended Prayer did not expressly ask the district court to enjoin PSRB's dangerousness rule, FRCP 8 does not require magic words. The body of the Amended Complaint framed the injury as PSRB's use of a non-causal dangerousness standard and requested declaratory and injunctive relief to "end this violation pursuant to ORS 161.346(1)(a)." Am. Compl.    111;

21

*see also id.* § E 92 (alleging that the Oregon Administrative Rule changes allow indefinite detention without a causal link). The violation identified in 111 is PSRB's continued jurisdiction "without a causal nexus between his mental condition and current substantial dangerousness," not simply the fact that Plaintiff remains in custody. That violation can be cured through declaratory and injunctive relief requiring PSRB to apply the proper causal-nexus test in future reviews, which is exactly the prospective relief now sought on appeal.

**I.C. The Order's key mistake was treating an alternative discharge request as converting the entire case into habeas.**

The district court's reasoning rests on a categorical step that the Supreme Court has rejected. It assumed that because Appellant also requested discharge as an alternative remedy, every claim "necessarily implies" unlawful custody and must be recast as habeas. That reading disregards the original Complaint, whose prayer for relief asked the court to declare PSRB's conduct unlawful and to require PSRB to adopt and implement constitutionally sound Oregon Administrative Rules and integration focused policies, without requesting damages. That is not the governing law. When a complaint seeks mixed relief, courts separate what would directly compel release from what would only compel lawful procedures. *Heck v. Humphrey*, 512 U.S. 477 (1994),

22

and *Wilkinson v. Dotson*, 544 U.S. 74 (2005), make clear that overlap with a potential future release does not automatically reclassify a civil rights suit into habeas. The proper course was severance: preserve and adjudicate the procedural ADA and due process claims, and if the court believed any narrow portion sounded in habeas, address only that portion through habeas rules. The Order did the opposite. It dismissed the entire action without reaching the merits of the procedural claims, solely because discharge appeared in the prayer as contingent relief. That is legal error.

Appellant has now made the point even clearer on appeal: damages are not being pursued, and any release-related language is severed from the core procedural challenge. That clarification confirms what the pleadings already showed: this case is about unlawful standards and ongoing jurisdictional injury, not a federal command to release.

**I.D. Appellant's injuries exist independent of hospital placement, so success does not necessarily end custody.**

The Order also collapsed "confinement" into "PSRB jurisdiction" and treated them as indistinguishable. Oregon law makes them distinct. PSRB jurisdiction continues in full force on conditional release. It carries curfew, travel limits, financial oversight, driving bans, mandatory treatment, and immediate revocation authority.

23

Those restraints are the injuries Appellant challenges, and they exist whether Appellant is inside OSH or living in the community. Because the challenged harm is jurisdiction-based rather than location-based, a judgment invalidating the non-causal rule and requiring a lawful PSRB review would not necessarily terminate custody. At most it would require the PSRB to reconsider jurisdiction under constitutional standards. Appellant could remain under PSRB authority after such a review if the Board lawfully found current disorder-linked dangerousness. That possibility alone places this case outside habeas exclusivity.

For these reasons, the district court's habeas-only dismissal should be reversed. The case should be remanded for a merits determination on Appellant's Title II and due process claims, with any genuinely habeas-type remedy, if the court believes one exists, severed rather than used to extinguish the procedural suit.

**Argument II. Even assuming mixed relief, severance or stay was required, not wholesale dismissal.**

### II.A. Mixed pleadings require courts to preserve non-habeas claims.

Even if the district court were right that a narrow piece of the requested relief could be characterized as habeas-type, that does not authorize dismissal of the entire action. The governing cases do not adopt a "one drop of habeas poisons the whole

24

complaint" rule. They instead draw a remedial boundary: procedural and prospective challenges remain available under § 1983 and Title II, even when success might later make release more likely through a future state proceeding. *Wilkinson* makes this explicit. The availability of a potential downstream benefit to custody does not transform a procedural civil rights suit into an all-habeas case.

*Wilkinson* and *Nettles* control the treatment of mixed relief. They instruct courts to ask claim by claim whether success would necessarily spell immediate or speedier release. If not, the claim lies outside the core of habeas and may proceed under § 1983 or Title II, even if success could later make release more likely through a future state proceeding. This approach follows *Wilkinson* and *Nettles*, which require claim-by-claim analysis and preserve procedural civil-rights claims that do not necessarily imply immediate or speedier release.

Here, Appellant's non-habeas claims were the core of the action. They challenged the PSRB's governing standards and the Oregon Administrative Rule that allows continued jurisdiction without present disorder-linked dangerousness. Those claims seek prospective correction of procedures and legal criteria. Under *Trimble v. City of Santa Rosa, 49 F.3d 583 (9th Cir. 1995)* and the mixed-pleading doctrine, those claims had to be preserved and adjudicated on their merits.

25

**II.B. The proper remedy was severance and, at most, a stay of any habeas slice.**

Given that structure, the district court had a straightforward path consistent with Supreme Court and Ninth Circuit law:

1. Identify any discrete request that the court believed would directly compel discharge and therefore sounded in habeas.

2. Sever that limited habeas-type demand from the pleading.

3. Stay or dismiss only that severed portion for lack of exhaustion if the court thought exhaustion applied.

4. Proceed to the merits on the remaining ADA and due process claims seeking declaratory and injunctive procedural relief.

*Trimble* itself affirmed summary judgment coupled with dismissal without prejudice only after concluding that the plaintiff's § 1983 claims directly attacked the validity of confinement and therefore belonged solely in habeas; it did not hold that any civil rights claim touching custody must be dismissed wholesale whenever a complaint also mentions release as a form of relief.

That approach would have respected both lines of authority at once: habeas rules for true release orders, and § 1983 and ADA adjudication for procedural and

26

integration-mandate claims. Instead, the Order took the most extreme option, dismissing everything without reaching the merits because release appeared as alternative relief. That remedy was not compelled by *Trimble* or any other controlling precedent. It was a remedial misstep that denied Appellant a federal forum for claims that are independently cognizable outside habeas.

Accordingly, even on the district court's mixed-relief premise, the dismissal cannot stand. The correct disposition is reversal with instructions to sever any habeas-type component if one exists, and to adjudicate the remaining procedural ADA and due process claims on remand.

**Argument III. The exhaustion dismissal is wrong on law and facts.**

**III.A. Habeas exhaustion does not apply to ADA or § 1983 procedural claims.**

The Order dismisses this case for supposed non-exhaustion, but that conclusion depends on the same mistaken premise addressed above. Appellant's remaining claims are not habeas claims. They are ADA and § 1983 procedural challenges to unlawful PSRB standards and decision-making methods. Those claims do not carry a habeas exhaustion requirement. § 1983 claims seeking declaratory or injunctive relief have no state-exhaustion prerequisite. *See Patsy v. Bd. of Regents*, 457 U.S.

27

496, 516 (1982). *Bogovich* holds that ADA challenges to parole-type procedures may proceed outside habeas because they seek prospective correction of processes, not a federal order of release. The same is true here. Appellant challenges the PSRB's jurisdictional standard and the 2025 rule removing the causal nexus. Success would require a lawful review under correct criteria, not immediate discharge ordered by this Court. Because these are non-habeas claims, the district court had no basis to impose habeas exhaustion and dismiss on that ground.

Put simply, exhaustion was treated as a gate that blocks merits review only because the court mislabeled the suit as habeas. Once the claims are correctly understood as procedural ADA and due process claims, the exhaustion rationale falls away.

**III.B. Even if exhaustion mattered, Appellant pursued state judicial review.**

The exhaustion ruling is both legally incorrect and, in any event, no longer a barrier to reaching the merits. Even if this Court were to view some slice of Appellant's claims through a habeas lens, Appellant has now pursued state judicial review of the same PSRB order through a pending petition in the Oregon Court of Appeals, *Berman v. Psychiatric Security Review Board*, No. A187609 (Or. Ct. App. petition filed May 22, 2025), of which this Court may take judicial notice. That filing gave Oregon courts a full and fair opportunity to address the legality of the

28

PSRB's continued jurisdiction, including the causal-nexus issue. At minimum, that eliminates any factual basis for the Order's exhaustion finding and defeats any suggestion that Appellant sat on available state remedies.

### III.C. The minimum correct remedy would be a stay, not dismissal.

Even under the district court's flawed view that some portion of relief overlaps with habeas, the proper response was not wholesale dismissal. Where state proceedings are pending on a related custody question, federal courts routinely stay any habeas-type slice while proceeding on distinct civil rights claims. Dismissing the entire action without prejudice served no exhaustion purpose. It only delayed adjudication of federal ADA and due process claims that are independent of habeas and independent of the state appeal's outcome.

Because exhaustion does not apply to the procedural claims, and because Appellant has in any event pursued state judicial review, dismissal on exhaustion grounds was legal and factual error. The judgment should be vacated and the case remanded for merits review.

**Argument IV. Absolute immunity does not justify refusing to reach prospective relief.**

The district court relied on absolute immunity to dispose of the case without reaching the merits. Under *Ex parte Young, 209 U.S. 123 (1908)*, prospective declaratory and injunctive relief remains available to stop ongoing enforcement of unconstitutional rules, even where damages are unavailable. That approach fails for two independent reasons. First, the immunity analysis addressed only retrospective damages, and Appellant has severed and disclaimed damages on appeal. Second, even if damages had remained in play, absolute immunity cannot be used to extinguish forward-looking challenges to ongoing unlawful standards. The Order therefore provides no valid basis to avoid adjudicating Appellant's prospective constitutional and ADA claims.

**IV.A. Quasi-judicial immunity, at most, bars retrospective damages for adjudicative acts.**

Appellant does not dispute the narrow proposition that PSRB members performing adjudicative functions are treated like quasi-judicial actors for purposes of retrospective damages. In that limited sense, immunity may shield board members from personal liability for past hearing decisions. Appellant accepts that point and has removed damages from the case.

30

That concession ends the damages question. It does not end, or even reach, the claims that remain.

### IV.B. Immunity does not bar prospective declaratory relief.

Appellant's live claims seek a declaration that the PSRB's current jurisdictional standard, including the 2025 rule text that fails to ensure a constitutionally adequate causal nexus, violates due process and the ADA. Declaratory relief is not a backward-looking damages remedy. It is a forward-looking clarification of legal obligations that governs future PSRB hearings and decisions. The injury Appellant alleges is ongoing: continued PSRB jurisdiction based on an unconstitutional standard. Because the controversy is present and continuing, declaratory relief remains available even when damages are not.

The Order improperly treated immunity as a reason to step away from that question. But immunity functions as a shield against liability, not as a license to keep applying unlawful rules without judicial review.

### IV.C. Prospective injunctive relief is also available because Appellant challenges enforcement of an unconstitutional rule going forward.

Appellant also seeks an injunction that prevents future use of OAR 859-030-0010(3)(b)(B) and requires a new PSRB review under the constitutionally

required causal-nexus standard. This request targets ongoing enforcement and future decision-making, not past adjudications.

Two points matter here.

1. **The relief is directed at rule enforcement, not damages for hearing outcomes.** Appellant is not asking the Court to punish PSRB members for prior decisions. Appellant is asking the Court to stop continued use of an unlawful standard and to require lawful procedures in future hearings. That is the core function of prospective injunctive relief.

2. **Rulemaking and policy adoption are administrative or legislative functions, not adjudicative ones.** The district court did not distinguish between those distinct functions, but instead treated the entire case as if it arose solely from an adjudicative "decision to deny discharge," effectively extending quasi-judicial immunity to shield the ongoing enforcement of an unconstitutional rule. The challenged injury stems from the PSRB's adoption and application of a rule that fails to maintain disorder-linked dangerousness as a meaningful jurisdictional prerequisite. Creating and maintaining that standard is not a case-specific adjudication. It is a system-level policy choice. The rationale for quasi-judicial immunity, protection of neutral

decision-making in individual cases, does not extend to insulating unconstitutional rulemaking from review.

Even if one assumes some immunity for individual hearing decisions, that immunity cannot be stretched to bar an injunction against the ongoing enforcement of a facially invalid standard. Otherwise, any agency could avoid judicial scrutiny of unconstitutional rules simply by applying them through hearings.

Because Appellant has severed damages, the immunity holding does not dispose of anything that remains. And even if damages had remained, absolute immunity would not bar the prospective declaratory and injunctive relief Appellant seeks. The district court therefore erred by using immunity as a reason to avoid the merits. The proper remedy is reversal and remand for a merits determination on the due process and ADA claims.

**Argument V. Merits overview for remand guidance**

**V.A. Substantive due process and ORS 161.346 require current disorder-linked danger, and OAR 859-030-0010(3)(b)(B) undermines that nexus.**

If this Court remands, the merits framework is straightforward. Both federal due process and Oregon's governing statute condition PSRB jurisdiction on two present

findings: a qualifying mental disorder and a current substantial danger to others, with that danger meaningfully tied to the current disorder. Under *Foucha*, an insanity acquittee may be held only so long as he is both mentally ill and dangerous; once dangerousness is no longer meaningfully tied to an active mental illness, continued civil commitment becomes unconstitutional. While the *Foucha* opinion itself is often quoted as requiring "mental illness and dangerousness," the Court's reasoning implies that the mental illness must be the basis for the commitment, making the presence of the illness a necessary precondition to the continued use of the civil commitment apparatus. *Foucha v. Louisiana*, 504 U.S. 71 (1992) (holding that continued confinement of an insanity acquittee is unconstitutional absent both current mental illness and dangerousness). Oregon codified a similar requirement in ORS 161.346(1)(a), which conditions PSRB jurisdiction on both a qualifying mental disorder and a present substantial danger to others. The State may not continue jurisdiction based on historical episodes, generalized risk, or administrative uncertainty when present disorder-linked danger is absent. The 2024 and 2025 OAR amendments mark a gradual drift from that baseline, expanding PSRB jurisdiction from cases where current risk is genuinely explained by a qualifying disorder to cases where a past diagnosis and speculative future risk can be treated as enough to justify continued control.

The allegations in this case illustrate how the challenged rule operates in practice. Appellant has alleged sustained psychiatric stability since mid-2022, consistent medication adherence, and effective self-monitoring, with treating psychiatry reporting that hospital-level care is no longer clinically necessary and that risk is manageable through ordinary outpatient supports and coping skills. On Appellant's telling, the PSRB's jurisdictional rationale now relies primarily on speculative risk if supervision were removed and the absence of a finalized community plan, rather than on current, individualized evidence that a qualifying mental disorder is what makes Appellant substantially dangerous to others. If those allegations are credited on remand, they would show a decision driven by generalized and administrative concerns rather than by the present disorder-linked danger that *Foucha* and ORS 161.346 require.

The 2025 rule change makes the constitutional problem explicit. OAR 859-030-0010(3)(b)(B) permits continued jurisdiction when a qualifying disorder "need not be sufficient on its own" to cause danger. That language authorizes confinement even where any remaining risk is primarily attributable to non qualifying factors. In effect, the rule fails to ensure a constitutionally adequate link between mental illness and current dangerousness. On remand, the district court should evaluate that rule facially and as applied, because a standard that allows

35

indefinite civil commitment without present disorder caused danger cannot be reconciled with *Foucha* or ORS 161.346.

*Haidar v. Psychiatric Sec. Review Bd*., 324 Or. App. 129 (2023). Reversed and remanded a PSRB order that refused to discharge a woman found GEI in 1994 and instead continued her conditional release despite evidence that she no longer presented a substantial danger to others. In *Haidar*, the petitioner had advanced dementia, schizophrenia controlled with medication, severe cognitive decline, and such profound physical limitations that she required help with basic daily activities and was essentially confined to a wheelchair or bed, and both of her treating professionals testified that she did not pose a substantial danger. The Oregon Court of Appeals held that PSRB's order lacked substantial evidence and substantial reason because it relied on outdated records and speculative concerns instead of grappling with her current condition and the discharge standard in ORS 161.351. *Haidar* shows how the PSRB can continue jurisdiction over a profoundly debilitated, non-ambulatory person even when all treating experts agree that she does not present an actual danger to others.

*Walters v. Psychiatric Sec. Review Bd*., 341 Or. App. 41, 574 P.3d 49 (2025). At a five-year jurisdictional hearing, every treating clinician (including PSRB's own treating psychiatrist) testified that Walters no longer had any qualifying mental

disorder and that a past adjustment disorder had fully resolved, yet PSRB still found a current qualifying disorder based on old records; the Oregon Court of Appeals held there was no substantial evidence for that finding and reversed. *Walters* illustrates that even when the state's own experts say there is no longer a qualifying mental illness, PSRB can still cling to jurisdiction on the basis of stale information.

*Norgren v. Psychiatric Sec. Review Bd.*, 344 Or. App. 617 (2025). The court reversed PSRB's refusal to discharge Norgren where he had been symptom-free for years, living safely in the community, and the board relied on a speculative chain of "what if" events (what if he stopped medications, relapsed, became manic, and then dangerous) instead of concrete evidence that his current condition made him a substantial danger to others. Norgren shows the same pattern of hypothetical future-risk reasoning being used to avoid discharge, even when real-world experience in the community is positive.

*Drew v. Psychiatric Sec. Review Bd.*, 322 Or. 491, 909 P.2d 1211 (1996). The Oregon Supreme Court vacated a PSRB order continuing jurisdiction, explaining that although the record contained evidence that could support dangerousness, the board failed to logically connect those facts to its conclusion; *Drew* is often cited for the rule that PSRB cannot just point to past violence or generalized risk and

must provide substantial reason linking current facts to present "substantial danger."

Taken together, these cases suggest a repeated pattern: PSRB resists discharge even when the record shows either no current qualifying mental disorder or no meaningful current dangerousness, including situations where the state's own clinicians support release.

From Appellant's perspective as someone currently under PSRB jurisdiction, these cases and rule changes all point in the same direction. The legal standards are drifting toward broader, more speculative definitions of dangerousness at the same time the Board is repeatedly reversed for refusing to discharge people whom its own experts describe as non-dangerous or no longer mentally ill.

### V.B. The ADA integration mandate under *Olmstead* is violated by continued institutionalization or jurisdictional segregation.

Title II's integration mandate requires public entities to provide services in the most integrated setting appropriate to the person's needs. Here, treating professionals have determined community placement is appropriate, Appellant does not oppose it, and the requested modifications are reasonable, so continued segregation triggers *Olmstead v. L.C., 527 U.S. 581 (1999)* scrutiny. Under

*Olmstead*, unjustified segregation of a qualified person with a disability is discrimination. The clinical consensus in Appellant's case supports community placement. Treating professionals have found that Appellant can be safely served outside a hospital setting with ordinary outpatient supports. The PSRB itself has approved conditional release, confirming that the State's clinicians view community living as appropriate.

Continued hospitalization or continued PSRB status that enforces segregated placements and restrictive conditions, despite that clinical determination, constitutes unjustified segregation by reason of disability. The injury is not limited to a building. It is the State's ongoing imposition of a disability based custodial regime that blocks integration, autonomy, and equal participation in community life. On remand, the district court should reach the merits of the ADA claim under the *Olmstead* framework and determine whether the State can justify continued institutional segregation in light of the undisputed medical record and the availability of integrated alternatives.

## VII. CONCLUSION AND RELIEF REQUESTED

The district court dismissed this case without reaching the merits based on a legal misclassification. Appellant's claims challenge the standards and procedures governing PSRB jurisdiction and ongoing segregation, not the validity of the

39

original GEI adjudication or the fact of custody. Because success would not necessarily result in immediate or speedier release, the claims are properly brought under 42 U.S.C. § 1983 and Title II of the ADA.

Appellant respectfully requests that this Court:

1. Vacate the judgment of dismissal entered November 3, 2025.

2. Hold that Appellant's due process and ADA claims are cognizable under § 1983 and Title II because they seek prospective, procedural, and declaratory relief that does not necessarily imply the invalidity of confinement.

3. Remand for a merits determination on those claims, with instructions that if any portion of the requested relief is construed as habeas type, the district court must sever or stay only that limited slice rather than dismiss the entire action, and grant Appellant leave to amend the complaint, if necessary, to conform the pleadings to the narrowed, forward-looking declaratory and injunctive relief described in this brief.

## VIII. STATEMENT OF RELATED CASES

Appellant is not aware of any related cases currently pending in this Court within the meaning of Ninth Circuit Rule 28-2.6.

Appellant has, however, filed a petition for judicial review in the Oregon Court of Appeals challenging the same PSRB decision referenced in this appeal. That case, *Berman v. Psychiatric Security Review Board*, No. A187609 (Or. Ct. App. 2025), was filed on May 22, 2025, and remains pending as of the date of this filing.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: December 16, 2025.

Respectfully submitted,

s/ *Preston Berman*
PRESTON BERMAN
2600 Center St. NE
Salem, OR 97301-2669
Telephone: (503) 947-3764
*Plaintiff-Appellant appearing Pro Se*

## CERTIFICATE OF COMPLIANCE AND SERVICE

I am the Plaintiff-Appellant in this matter, appearing pro se. Pursuant to Fed. R. App. P. 32(g)(1), I certify that this Opening Brief contains 7407 words, as calculated using Google Docs (latest version as of November 5, 2025), excluding the sections exempted by rule. This brief complies with the word-count limitation set forth in Ninth Circuit Rule 32-1(a), which permits a maximum of 14,000 words. It further complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6), having been prepared using a proportionally spaced typeface in 14-point Times New Roman font, formatted in Google Docs.

I hereby certify that on December 16, 2025, I electronically filed the foregoing Opening Brief of Plaintiff-Appellant with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate EDSS system. Attorneys for Defendants-Appellees Psychiatric Security Review Board, et al., who are registered CM/ECF users, were served via the appellate CM/ECF system.

Date: December 16, 2025

s/ *Preston Berman*
PRESTON BERMAN
2600 Center St. NE
Salem, OR 97301-2669
Telephone: (503) 947-3764
*Plaintiff-Appellant, appearing pro se*

# IX. ADDENDUM

Relevant statutes and rules:

- 42 U.S.C. § 1983

- Title II ADA (42 U.S.C. §§ 12131–12134)

- OAR 859-010-0005 (PSRB 1-2023, amend filed 04/19/2023, effective 04/21/2023)

  https://secure.sos.state.or.us/oard/viewReceiptTRIM.action?ptId=9427150

- OAR 859-010-0005 (Permanent Administrative Order PSRB 1-2024, effective April 5, 2024)

  https://records.sos.state.or.us/ORSOSWebDrawer/Recordhtml/10142479

- OAR  859-030-0010 (PSRB 1-2025, temporary amend filed 03/10/2025, effective 03/10/2025 through 09/05/2025)

  https://records.sos.state.or.us/ORSOSWebDrawer/Recordhtml/10876066

- OAR  859-030-0010 PSRB 2-2025, amend filed 07/31/2025, effective 07/31/2025

  https://records.sos.state.or.us/ORSOSWebDrawer/Recordhtml/11541512

- [PROPOSED] SECOND AMENDED COMPLAINT

# EXHIBIT 1

OFFICE OF THE SECRETARY OF STATE
SHEMIA FAGAN
SECRETARY OF STATE

CHERYL MYERS
DEPUTY SECRETARY OF STATE



ARCHIVES DIVISION
STEPHANIE CLARK
DIRECTOR

800 SUMMER STREET NE
SALEM, OR 97310
503-373-0701

## PERMANENT ADMINISTRATIVE ORDER

PSRB 1-2023
CHAPTER 859
PSYCHIATRIC SECURITY REVIEW BOARD

FILED
04/19/2023 12:45 PM
ARCHIVES DIVISION
SECRETARY OF STATE
& LEGISLATIVE COUNSEL

FILING CAPTION: These approved amendments will make permanent the temporary rules that were previously in effect.

EFFECTIVE DATE: 04/21/2023

AGENCY APPROVED DATE: 04/19/2023

CONTACT: Mandy Standiford
503-709-8861
mandy.standiford@psrb.oregon.gov

610 SW Alder St
Ste \$420
Portland, OR 97205

Filed By:
Mandy Standiford
Rules Coordinator

RULES:
859-010-0005, 859-510-0005, 859-540-0010

AMEND: 859-010-0005

RULE TITLE: Definitions

NOTICE FILED DATE: 02/15/2023

RULE SUMMARY: This rule was amended to update references to the most current Diagnostic and Statistical Manual of Mental Disorders from DSM 5 to DSM-5-TR.

RULE TEXT:
(1) "Administrative Hearing" means a meeting of the Board where a quorum is present and a matter is reviewed (e.g. an outpatient supervisor request for modification to a client's conditional release plan). The Board shall consider information in the written record only and no oral testimony shall be received; If an objection is made to the administrative hearing, the client or the state has the right to request a full hearing. On its own motion, the Board may require further information, testimony or the presence of the client and therefore, set the matter for a full hearing.
(2) "Administrative Meeting" is any meeting of the Board where a quorum is present for the purpose of considering matters relating to Board policy and administration. Minutes shall be taken during an administrative meeting and distributed to Board members and interested persons. Minutes shall be voted on and approved at subsequent administrative meetings;
(3) "Case Monitors" are individuals designated in the conditional release order who are responsible for ensuring clients on conditional release receive the services and support they need and reporting to the PSRB a client's progress, activities and compliance with conditions of release or lack thereof.
(4) "Client" refers to any person under the jurisdiction of the Board and may be used interchangeably with "person," "patient," or "outpatient."
(5) "Community Evaluation" is a written report ordered by the Board or other court and conducted by a qualified mental health professional from a local mental health program designated by the Board to determine if an individual can be adequately controlled with supervision and treatment if conditionally released and that appropriate supervision and treatment are available.

EXHIBIT 1

(6) "Conditional Release" is a grant by the court or the Board for a client, patient or defendant to reside outside a state hospital in the community under conditions mandated by the court or Board for monitoring and treatment of mental and physical health.

(7) "Consultation" is a screening completed on a PSRB template, ordered by a court and conducted by a qualified mental health professional from a local mental health program designated by the Board, to determine whether the necessary supervision and treatment for the individual are available in the community and appropriate for the individual and informs the court as to whether a community evaluation is necessary to determine whether the person can be adequately controlled with supervision and treatment if conditionally released.

(8) "Danger"; "Substantial Danger"; or "Dangerousness" means a demonstration or previous demonstration of intentional, knowing, reckless or criminally negligent behavior which places others at risk of physical injury because of the person's qualifying mental disorder.

(9) "Escape" means:

(a) A client committed to a state hospital:

(A) Leaves the supervision of hospital staff without permission;

(B) Leaves the hospital without permission; or

(C) Fails to return at the appointed time to the hospital.

(b) Any client who leaves the State of Oregon without authorization of the Board;

(c) Any client who fails to return to the State of Oregon as directed by the Board.

(10) "Full Hearing" is a meeting of the Board where parties are present, testimony is taken and written findings on the issue(s) before the Board are made.

(11) "Incident Report" means a report completed by the case monitor that describes any significant behavioral or mental health changes, serious violations of conditional release requirements, psychotropic medication refusals, or any other information that is relevant to an individual's ability to be safely managed in a community setting. The incident report shall contain the following information:

(a) A description of incident;

(b) A summary of the interventions that were used by community mental health provider staff;

(c) A summary of the debrief with the individual or a summary of why a debrief did not occur; and

(d) Any recommendations on how to mitigate future incidents, including but not limited to modifications to the individual's conditional release plan.

(12) "Insanity Defense", also known as "GEI", refers to a plea or finding of "Guilty Except for Insanity". Nomenclature. For offenses committed on or after January 1, 1984, a person is guilty except for insanity if, as a result of a qualifying mental disorder (formerly "mental disease or defect") at the time of engaging in criminal conduct, the person lacked substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law. The name of the insanity defense from January 1, 1978, through December 31, 1983, was "not responsible due to mental disease or defect." From January 1, 1971, through December 31, 1977, the insanity defense was known as "not guilty by reason of mental disease or defect." The name of the insanity defense prior to 1971 was "not guilty by reason of insanity."

(13) "Jurisdictional Report" means a report completed by a psychiatrist, psychiatric mental health nurse practitioner, or licensed psychologist that assists the Board in making the determinations described in ORS 161.341(1), ORS 161.346(1), or ORS 161.336(5)(a) and includes an analysis of the following information:

(a) An opinion as to the mental condition of the person;

(b) Whether the person presents a substantial danger to others; and

(c) Whether the person could be adequately controlled with treatment as a condition of release.

(14) "Monthly Progress Report" means a template report available on the PSRB's website that is required to be completed for all individuals who are on conditional release by the individual's case monitor each month that includes the following information attached, if applicable:

(a) Prescriber and specialty progress notes that occurred within the reporting month of the monthly progress report;

EXHIBIT 1

and

(b) Any incident reports that that occurred within the reporting month of the monthly progress report.

(15) "Qualifying Mental Disorder" (formerly "Mental disease or defect") means:

(a) a developmental or intellectual disability, traumatic brain injury, brain damage or other biological dysfunction that is associated with distress or disability causing symptoms or impairment in at least one important area of an individual's functioning and is defined in the current Diagnostic and Statistical Manual of Mental Disorders (DSM 5-TR) of the American Psychiatric Association; or

(b) any diagnosis of a psychiatric condition which is a significant behavioral or psychological syndrome or pattern that is associated with distress or disability causing symptoms or impairment in at least one important area of an individual's functioning and is defined in the Diagnostic and Statistical Manual of Mental Disorders (DSM 5-TR) of the American Psychiatric Association.

(c) "Qualifying Mental Disorder," described in subsections (a) and (b), excluding those conditions described in subsection (d) includes:

(A) A disorder in a state of remission which could with reasonable medical probability occasionally become active; or

(B) A disorder that could become active as a result of a non-qualifying mental disorder.

(d) "Non-Qualifying Mental Disorder" is defined as a mental disorder in which the condition is:

(A) A diagnosis solely constituting the ingestion of substances (e.g., chemicals or alcohol), including but not limited to alcohol-induced psychosis;

(B) An abnormality manifested solely by repeated criminal or otherwise antisocial conduct; or

(C) An abnormality constituting a personality disorder.

(16) "Party" means the State, which includes the Oregon Department of Justice or, if representing the State's interest, the District Attorney from the county where the GEI was adjudicated, client and client's counsel.

(17) "PSRB" or "Board" means the Oregon Psychiatric Security Review Board.

(18) "Quorum" means the presence of at least three members, in person or on the telephone, of the Adult Panel of the Board.

(19) "State Hospital" means any state institution or facility operated by the Oregon Health Authority.

(20) "Unauthorized Departure" means a person who is under the jurisdiction of the Board who is conditionally released to the community that:

(a) Leaves the supervision of the community mental health program staff without permission;

(b) Leaves the authorized placement listed on the conditional release order without permission;

(c) Fails to return to the authorized placement listed on the conditional release order at the appointed time;

(d) Leaves the State of Oregon without authorization of the Board; or

(e) Fails to return to the State of Oregon as directed by the Board.

(21) "Victim" means the person or persons who have suffered financial, social, psychological or physical harm as a result of a crime that brought the client under the Board's jurisdiction. In the case of a homicide or abuse of a corpse, a member of the immediate family of the decedent and, in the case of a minor victim, the legal guardian of the minor. In no event shall the PSRB client be considered a victim of his/her own GEI case.

STATUTORY/OTHER AUTHORITY: ORS 161.387

STATUTES/OTHER IMPLEMENTED: ORS 161.387, ORS 161.295 - 161.400

EXHIBIT 1

AMEND: 859-510-0005

RULE TITLE: Definitions

NOTICE FILED DATE: 02/15/2023

RULE SUMMARY: This rule was amended to update references to the most current Diagnostic and Statistical Manual of Mental Disorders from DSM 5 to DSM-5-TR.

RULE TEXT:

(1) "Administrative Hearing" means a meeting of the Board at which a quorum is present but the youth is not for the purpose of deliberating about a youth's status or conditional release plan based upon the written record before the Board.

(2) "Administrative Meeting" means any meeting of the Board at which a quorum is present for the purpose of considering matters relating to Board policy and administration, at which minutes are taken, and approved at a subsequent administrative meeting by a majority of members present.

(3) "Board" means the juvenile panel of Oregon Psychiatric Security Review Board as constituted under ORS 161.385.

(4) "Burden of proof" means the responsibility of the youth or the state to convince the Board of the truth of its version or interpretation of facts or issues in dispute.

(5) "Commit" means order of placement in a secure facility.

(6) "Community Evaluation" is a written report ordered by the Board or other court and conducted by a qualified mental health professional from a local mental health program designated by the Board to determine if a youth can be adequately controlled with supervision and treatment if conditionally released and that necessary supervision and treatment are available.

(7) "Conditional Release" means an order by the court or Board authorizing a youth to reside outside a Secure Adolescent In-patient Program (SAIP), Secure Children's In-patient Program (SCIP), or Intensive Treatment Services (ITS), in the community under conditions established for the monitoring and treatment of the youth's mental and physical health.

(8) "Department of Human Services" and "Department" mean the Oregon Department of Human Services as constituted under ORS 409.010.

(9) "Discharge" means the termination of a youth's jurisdiction under the Board because the youth is either no longer affected by a serious mental condition or no longer affected by a qualifying mental disorder that presents a substantial danger to others and requires regular medical care, medication, supervision or treatment; or term of jurisdiction has lapsed.

(10) "Escape" means:

(a) A youth committed to a state hospital, SAIP, SCIP, or SITP who:

(A) Leaves the supervision of treatment staff without permission;

(B) Leaves the facility without permission; or

(C) Fails to return at the appointed time to the facility.

(b) Any youth who leaves the State of Oregon without authorization of the Board;

(c) Any youth who fails to return to the State of Oregon as directed by the Board.

(11) "Full Hearing" means a meeting of the Board at which a quorum is present, the youth is present, evidence is received, a youth's status is reviewed pursuant to Chapter 419C and at the conclusion of which the Board makes findings of fact and conclusions of law as required by law from which written orders will issue.

(12) "Incident Report" means a report completed by the JPSRB case monitor or supervisor that describes any significant behavioral or mental health changes, serious violations of conditional release requirements, psychotropic medication refusals, or any other information that is relevant to a youth's ability to be safely managed in a community setting. The incident report should contain the following information:

(a) A description of incident;

(b) A summary of the interventions that were used by community mental health provider staff;

EXHIBIT 1

(c) A summary of the debrief with the youth or a summary of why a debrief did not occur; and

(d) Any recommendations on how to mitigate future incidents, including but not limited to modifications to the youth's conditional release plan.

(13) "Jurisdictional Report" means a report completed by a psychiatrist, psychiatric mental health nurse practitioner, or licensed psychologist that assists the Board in making the determinations described in ORS 419C.532, and includes the following information:

(a) An opinion as to the mental condition of the youth;

(b) Whether the youth presents a substantial danger to others; and

(c) Whether the youth could be adequately controlled with treatment as a condition of release.

(14) "Monthly Progress Report" means a template report available on the PSRB's website that is required to be completed for all youth who are on conditional release by the community agency mental health provider that includes the following information attached, if applicable:

(a) Prescriber and specialty progress notes that occurred within the reporting month of the monthly progress report; and

(b) Any incident reports that that occurred within the reporting month of the monthly progress report.

(15) "Qualifying Mental Disorder" (formerly "Mental disease or defect") means:

(a) that which is manifested by developmental delay or disability if a mental deficiency exists concurrently with qualitative deficits in activities of daily living and is not otherwise attributable to mental illness or substance abuse or influenced by current situational trauma; or

(b) any diagnosis of mental disorder which is a significant behavioral or psychological syndrome or pattern that is associated with distress or disability causing symptoms or impairment in at least one important area of an individual's functioning and is defined in the current Diagnostic and Statistical Manual of Mental Disorders (DSM 5-TR) of the American Psychiatric Association.

(16) The term "qualifying mental disorder" does not include an abnormality manifested solely by repeated criminal or otherwise antisocial conduct; nor constituting solely a conduct or a personality disorder; nor solely an alcohol or drug abuse or dependence diagnosis.

(17) "Mental status" is defined as the mental, emotional, and behavioral functioning of a youth.

(18) "Patient" means any youth under the jurisdiction of the JPSRB, residing in a SAIP or SCIP.

(19) "Proof" means the achievement of a designated legal standard for persuading the trier of fact that a proposition is true. The standard of proof on all issues at hearings of the Board is by the preponderance of the evidence.

(20) "Quorum" means the presence at a hearing or meeting of at least three members of the Board.

(21) "Reasonable medical probability" means the finding by a physician or other qualified health professional that a given condition or illness is more likely than not to exist.

(22) "Responsible Except for Insanity" means the affirmative defense one must successfully assert in order to be placed under the jurisdiction of the JPSRB; or a finding by a judge that a youth, as a result of a qualifying mental disorder at the time the youth committed the act(s) alleged in the petition, lacked substantial capacity either to appreciate the nature and quality of the act or to conform the youth's conduct to the requirements of law.

(23) "Revocation" means the return to a secure residential adolescent or children's treatment facility of a youth pursuant to an order of the Board when the youth has violated the terms of a conditional release order or has experienced a change in mental status giving reasonable cause to believe that the youth may present a danger to others and cannot be controlled by appropriate interventions.

(24) "SAIP" means secure adolescent in-patient treatment program designated by the Oregon Health Authority.

(25) "SCIP" means secure child in-patient treatment program designated by the Oregon Health Authority.

(26) "SITP" means a secure child and adolescent Seniors and People with Disabilities (SPD) in-patient treatment program designated by Department of Human Services.

(27) "Secure" means that the doors to the facility are locked at all times. Ingress and egress are controlled by staff.

(28) "Secure In-patient Program Pass", means any time a youth is authorized to be away from a secure child or

EXHIBIT 1

adolescent facility's grounds for any length of time unaccompanied by facility staff.

(29) "Serious mental condition" is one of the three specifically delineated diagnoses listed in 419C.520 (3).

(30) "Substantial danger" means the level of danger exhibited by threats of or engagement in acts of intentional, knowing, reckless or negligent behavior which places another person at risk of physical injury.

(31) "Unauthorized Departure" means:

(a) A youth who is under the jurisdiction of the Board who is conditionally released to the community that:

(A) Leaves the supervision of the community mental health program staff without permission;

(B) Leave the authorized placement listed on the conditional release order without permission;

(C) Fails to return to the authorized placement listed on the conditional release order at the appointed time;

(b) Any youth who leaves the State of Oregon without authorization of the Board; or

(c) Any youth who fails to return to the State of Oregon as directed by the Board.

STATUTORY/OTHER AUTHORITY: ORS 161.387, ORS 419C.533

STATUTES/OTHER IMPLEMENTED: ORS 419C.533

EXHIBIT 1

AMEND: 859-540-0010

RULE TITLE: Quorum and Decisions

NOTICE FILED DATE: 02/15/2023

RULE SUMMARY: This rule describes the requirements for the juvenile panel Board members of the Psychiatric Security Review Board to obtain quorum and make decisions.

RULE TEXT:

The presence of at least three members of the Board constitutes a quorum:

(1) Three concurring votes (affirmative or negative) are required for a Board decision.

(2) When three members cannot agree on a decision, the hearing shall be continued for no longer than 60 days. A recording of the hearing and the exhibits shall be reviewed by the remaining member(s) and a decision by the majority of the members shall be the finding and order of the Board.

(3) If the attorney for the youth objects to the remaining member's or members' review as set forth in section (2) of this rule and if good cause is shown, the Board may reschedule the matter for a full hearing before the entire Board.

(4) Prior to commencing a hearing, if an objection for good cause is made to a specific member of the Board sitting on the panel considering a specific case and the Board sustains it, that member shall withdraw and, if necessary, the hearing shall be continued and rescheduled.

(5) If a member of the juvenile panel is unable to be present for a hearing pursuant to ORS 419C.538 (Conditional release), 419C.540 (Discharge or conditional release after commitment) or 419C.542 (Hearings before juvenile panel of Psychiatric Security Review Board) due to an emergency, and quorum cannot be reached, a member of the adult panel of the Oregon Psychiatric Security Review Board, as defined in ORS 161.385(2) and OAR 859-010-0005(13), may sit on the Board for the purposes of obtaining quorum and holding the hearing.

(6) For the purposes of this rule, an emergency situation is defined as a situation wherein there are no other members of the juvenile panel available due to unplanned or unforeseen circumstances, including but not limited to a conflict of interest or a serious medical emergency.

STATUTORY/OTHER AUTHORITY: ORS 161.385, ORS 419C.533(1)

STATUTES/OTHER IMPLEMENTED: ORS 161.385, ORS 419C.533(1), ORS 419C.532

EXHIBIT 1

OFFICE OF THE SECRETARY OF STATE
LAVONNE GRIFFIN-VALADE
SECRETARY OF STATE

CHERYL MYERS
DEPUTY SECRETARY OF STATE
AND TRIBAL LIAISON



ARCHIVES DIVISION
STEPHANIE CLARK
DIRECTOR

800 SUMMER STREET NE
SALEM, OR 97310
503-373-0701

## PERMANENT ADMINISTRATIVE ORDER

PSRB 1-2024
CHAPTER 859
PSYCHIATRIC SECURITY REVIEW BOARD

**FILED**
04/03/2024 12:10 PM
ARCHIVES DIVISION
SECRETARY OF STATE
& LEGISLATIVE COUNSEL

FILING CAPTION: Amending definition of "Danger"; "Substantial Danger"; or "Dangerousness"

EFFECTIVE DATE: 04/05/2024

AGENCY APPROVED DATE: 03/27/2024

CONTACT: Alison Bort
503-229-5596
alison.bort@psrb.oregon.gov

6400 SE Lake Road
Suite 375
Portland, OR 97222

Filed By:
Alison Bort
Rules Coordinator

AMEND: 859-010-0005

REPEAL: Temporary 859-010-0005 from PSRB 3-2023

RULE TITLE: Definitions

NOTICE FILED DATE: 02/16/2024

RULE SUMMARY: The Court of Appeals issued a decision that relied upon the PSRB's definition of "danger" in making their finding. The court's interpretation of the rule is not aligned with the Board's interpretation and impacts how the Board determines if a person's jurisdiction under the Board should be retained. The agency filed a temporary modify its definition of "danger" to align with the Board's practice of determining whether jurisdiction is proper. In addition, the agency filed a petition to the Oregon Supreme Court for review; however, review was denied. Therefore, the agency is moving forward with making the temporary rule permanent.

RULE TEXT:

(1) "Administrative Hearing" means a meeting of the Board where a quorum is present and a matter is reviewed (e.g. an outpatient supervisor request for modification to a client's conditional release plan). The Board shall consider information in the written record only and no oral testimony shall be received; If an objection is made to the administrative hearing, the client or the state has the right to request a full hearing. On its own motion, the Board may require further information, testimony or the presence of the client and therefore, set the matter for a full hearing.
(2) "Administrative Meeting" is any meeting of the Board where a quorum is present for the purpose of considering matters relating to Board policy and administration. Minutes shall be taken during an administrative meeting and distributed to Board members and interested persons. Minutes shall be voted on and approved at subsequent administrative meetings;
(3) "Case Monitors" are individuals designated in the conditional release order who are responsible for ensuring clients on conditional release receive the services and support they need and reporting to the PSRB a client's progress, activities and compliance with conditions of release or lack thereof.
(4) "Client" refers to any person under the jurisdiction of the Board and may be used interchangeably with "person," "patient," or "outpatient."
(5) "Community Evaluation" is a written report ordered by the Board or other court and conducted by a qualified mental

EXHIBIT 1

health professional from a local mental health program designated by the Board to determine if an individual can be adequately controlled with supervision and treatment if conditionally released and that appropriate supervision and treatment are available.

(6) "Conditional Release" is a grant by the court or the Board for a client, patient or defendant to reside outside a state hospital in the community under conditions mandated by the court or Board for monitoring and treatment of mental and physical health.

(7) "Consultation" is a screening completed on a PSRB template, ordered by a court and conducted by a qualified mental health professional from a local mental health program designated by the Board, to determine whether the necessary supervision and treatment for the individual are available in the community and appropriate for the individual and informs the court as to whether a community evaluation is necessary to determine whether the person can be adequately controlled with supervision and treatment if conditionally released.

(8) "Danger"; "Substantial Danger"; or "Dangerousness" means a risk that the person will inflict injury or harm to others. Evidence may include information about historical patterns of behavior, recent behavior, or verbal or physical threats, which have caused injury or harm or would place a reasonable person in fear of sustaining injury or harm. This determination does not require an imminent risk of injury or harm to others.

(9) "Escape" means:

(a) A client committed to a state hospital:

(A) Leaves the supervision of hospital staff without permission;

(B) Leaves the hospital without permission; or

(C) Fails to return at the appointed time to the hospital.

(b) Any client who leaves the State of Oregon without authorization of the Board;

(c) Any client who fails to return to the State of Oregon as directed by the Board.

(10) "Full Hearing" is a meeting of the Board where parties are present, testimony is taken and written findings on the issue(s) before the Board are made.

(11) "Incident Report" means a report completed by the case monitor that describes any significant behavioral or mental health changes, serious violations of conditional release requirements, psychotropic medication refusals, or any other information that is relevant to an individual's ability to be safely managed in a community setting. The incident report shall contain the following information:

(a) A description of incident;

(b) A summary of the interventions that were used by community mental health provider staff;

(c) A summary of the debrief with the individual or a summary of why a debrief did not occur; and

(d) Any recommendations on how to mitigate future incidents, including but not limited to modifications to the individual's conditional release plan.

(12) "Insanity Defense", also known as "GEI", refers to a plea or finding of "Guilty Except for Insanity". Nomenclature. For offenses committed on or after January 1, 1984, a person is guilty except for insanity if, as a result of a qualifying mental disorder (formerly "mental disease or defect") at the time of engaging in criminal conduct, the person lacked substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law. The name of the insanity defense from January 1, 1978, through December 31, 1983, was "not responsible due to mental disease or defect." From January 1, 1971, through December 31, 1977, the insanity defense was known as "not guilty by reason of mental disease or defect." The name of the insanity defense prior to 1971 was "not guilty by reason of insanity."

(13) "Jurisdictional Report" means a report completed by a psychiatrist, psychiatric mental health nurse practitioner, or licensed psychologist that assists the Board in making the determinations described in ORS 161.341(1), ORS 161.346(1), or ORS 161.336(5)(a) and includes an analysis of the following information:

(a) An opinion as to the mental condition of the person;

(b) Whether the person presents a substantial danger to others; and

(c) Whether the person could be adequately controlled with treatment as a condition of release.

EXHIBIT 1

(14) "Monthly Progress Report" means a template report available on the PSRB's website that is required to be completed for all individuals who are on conditional release by the individual's case monitor each month that includes the following information attached, if applicable:

(a) Prescriber and specialty progress notes that occurred within the reporting month of the monthly progress report; and

(b) Any incident reports that that occurred within the reporting month of the monthly progress report.

(15) "Qualifying Mental Disorder" (formerly "Mental disease or defect") means:

(a) a developmental or intellectual disability, traumatic brain injury, brain damage or other biological dysfunction that is associated with distress or disability causing symptoms or impairment in at least one important area of an individual's functioning and is defined in the current Diagnostic and Statistical Manual of Mental Disorders (DSM 5-TR) of the American Psychiatric Association; or

(b) any diagnosis of a psychiatric condition which is a significant behavioral or psychological syndrome or pattern that is associated with distress or disability causing symptoms or impairment in at least one important area of an individual's functioning and is defined in the Diagnostic and Statistical Manual of Mental Disorders (DSM 5-TR) of the American Psychiatric Association.

(c) "Qualifying Mental Disorder," described in subsections (a) and (b), excluding those conditions described in subsection (d) includes:

(A) A disorder in a state of remission which could with reasonable medical probability occasionally become active; or

(B) A disorder that could become active as a result of a non-qualifying mental disorder.

(d) "Non-Qualifying Mental Disorder" is defined as a mental disorder in which the condition is:

(A) A diagnosis solely constituting the ingestion of substances (e.g., chemicals or alcohol), including but not limited to alcohol-induced psychosis;

(B) An abnormality manifested solely by repeated criminal or otherwise antisocial conduct; or

(C) An abnormality constituting a personality disorder.

(16) "Party" means the State, which includes the Oregon Department of Justice or, if representing the State's interest, the District Attorney from the county where the GEI was adjudicated, client and client's counsel.

(17) "PSRB" or "Board" means the Oregon Psychiatric Security Review Board.

(18) "Quorum" means the presence of at least three members, in person or on the telephone, of the Adult Panel of the Board.

(19) "State Hospital" means any state institution or facility operated by the Oregon Health Authority.

(20) "Unauthorized Departure" means a person who is under the jurisdiction of the Board who is conditionally released to the community that:

(a) Leaves the supervision of the community mental health program staff without permission;

(b) Leaves the authorized placement listed on the conditional release order without permission;

(c) Fails to return to the authorized placement listed on the conditional release order at the appointed time;

(d) Leaves the State of Oregon without authorization of the Board; or

(e) Fails to return to the State of Oregon as directed by the Board.

(21) "Victim" means the person or persons who have suffered financial, social, psychological or physical harm as a result of a crime that brought the client under the Board's jurisdiction. In the case of a homicide or abuse of a corpse, a member of the immediate family of the decedent and, in the case of a minor victim, the legal guardian of the minor. In no event shall the PSRB client be considered a victim of his/her own GEI case.

STATUTORY/OTHER AUTHORITY: ORS 161.387

STATUTES/OTHER IMPLEMENTED: ORS 161.387, ORS 161.295 - 161.400

EXHIBIT 1

OFFICE OF THE SECRETARY OF STATE
TOBIAS READ
SECRETARY OF STATE

MICHAEL KAPLAN
DEPUTY SECRETARY OF STATE



ARCHIVES DIVISION
STEPHANIE CLARK
DIRECTOR

800 SUMMER STREET NE
SALEM, OR 97310
503-373-0701

**TEMPORARY ADMINISTRATIVE ORDER**
INCLUDING STATEMENT OF NEED & JUSTIFICATION
**PSRB 1-2025**
CHAPTER 859
PSYCHIATRIC SECURITY REVIEW BOARD

```
FILED
03/10/2025 10:32 PM
ARCHIVES DIVISION
SECRETARY OF STATE
& LEGISLATIVE COUNSEL
```

FILING CAPTION: Temporary rule to clarify jurisdictional criteria to maintain PSRB jurisdiction.

EFFECTIVE DATE: 03/10/2025 THROUGH 09/05/2025

AGENCY APPROVED DATE: 03/10/2025

CONTACT: Alison Bort
503-229-5596
alison.bort@psrb.oregon.gov

6400 SE Lake Road
Suite 375
Portland, OR 97222

Filed By:
Alison Bort
Rules Coordinator

NEED FOR THE RULE(S):

In 2024, the Court of Appeals issued Rinne v. PSRB, 326 Or App 777, which appeared to require a direct cause-and-effect relationship between a person's qualifying mental disorder and their dangerousness. The Board believed this interpretation conflicted with both its understanding of the law and its longstanding practices, prompting the amendment of its definition of dangerousness. The Board also planned to clarify this relationship further in future rulemaking.

However, shortly after this new rule was permanently adopted, the Oregon Supreme Court issued State v. Meiser, 372 Or 438, which appeared to reverse key aspects of Rinne (2023), aligning more closely with the Board's interpretation of the necessary connection between a qualifying mental disorder and dangerousness. Yet, Meiser (2024) established a lower threshold for utilizing the insanity defense, while Rinne (2023)—which arguably was overturned by Meiser (2024)—lowered the threshold for discharge from PSRB jurisdiction. This created a logical disjunction and confusion. Specifically, a defendant who successfully asserts a defense of guilty except for insanity (GEI) under Meiser (2024) could potentially qualify for discharge under Rinne's (2023) independent sufficiency or sole cause standard. Regardless of the threshold for entering the PSRB's jurisdiction, the threshold for discharge cannot be lower, or this logical disconnect would result in improper discharges, which would jeopardize public safety, waste valuable resources, and undermine the PSRB's intended function.

Further complicating matters, a lawsuit has been filed challenging the validity of the PSRB's newly adopted definition of dangerousness. The combined effect of the evolving case law and ongoing legal challenges has created substantial uncertainty regarding the PSRB's jurisdictional criteria. Given these complexities, there is an urgent need for a temporary rule to provide clarity on these critical jurisdictional issues, ensuring that the PSRB's decision-making remains consistent, legally sound, and aligned with the current state of the law.

JUSTIFICATION OF TEMPORARY FILING:

(1) Describe the specific consequences that result from the failure to immediately adopt, amend or suspend the rule(s):

Failure to immediately amend this rule would create significant confusion and legal uncertainty surrounding the PSRB's

EXHIBIT 1

jurisdictional criteria. Without a clear understanding of the relationship between a qualifying mental disorder and dangerousness, the Board's decisions could become inconsistent and legally vulnerable, opening the door to costly litigation. The PSRB may face allegations of either improperly retaining jurisdiction over individuals who no longer meet the criteria or unjustly discharging individuals who still pose a danger. Attorneys representing clients and the State could enter stipulations or negotiate agreements based on a misinterpretation or misunderstanding of the law due to the existing ambiguity. This could lead to flawed or unjust legal outcomes, where agreements fail to align with the current legal standards and case law. Ultimately, unjust discharges could result in individuals who remain dangerous being released, thereby jeopardizing public safety and undermining the core purpose of the PSRB's jurisdiction.

(2) who would suffer these consequences:

The primary parties who would suffer from these uncertainties are individuals under the PSRB's jurisdiction, who may face improper discharges or prolonged confinement due to the ambiguity in decision-making. Victims of past crimes, as well as those at risk of future harm, would also suffer as improper discharge decisions could lead to dangerous individuals being released. The public would be negatively affected by the perception that dangerous individuals are "getting away with it" due to the confusion and lack of clarity in the law. This perception could erode public trust in the legal and mental health systems, foster insecurity, and diminish confidence in PSRB decisions. Legal professionals, too, could be impacted as they base stipulations and legal strategies on an evolving and unclear legal standard, leading to unfair or legally unsound outcomes. Lastly, the PSRB itself could suffer reputational harm, with its decisions facing legal challenges, further exacerbating the uncertainty and delaying proper resolutions.

3. Why or how failure to immediately take rulemaking action would cause these consequences?

Failure to take immediate rulemaking action would leave the PSRB without the necessary legal clarity to address the confusion arising from the conflicting legal standards established in Rinne (2023) and Meiser (2024). The disparity between these two decisions, combined with the ongoing lawsuit, leaves critical jurisdictional criteria unclear, particularly regarding the relationship between a qualifying mental disorder and dangerousness. Without immediate action to clarify these standards, the PSRB would continue to operate under ambiguous guidelines, risking inconsistent application of the law. This inconsistency could lead to decisions that either contradict the current state of the law or leave the Board vulnerable to costly legal challenges. The Board has recently encountered its first new case where Meiser's (2024) combination theory was applied to assert jurisdiction. Meanwhile, Rinne (2023) is being argued as justification for discharges, even after the Board amended its dangerousness rule. This legal confusion creates a situation where decisions made by the Board could fail to reflect the evolving case law, and such decisions would likely be seen as legally questionable, leading to a greater risk of improper discharges and an overall lack of alignment with the law. By failing to take immediate action to clarify these issues, the PSRB would essentially be allowing legal ambiguity to persist, jeopardizing public safety, increasing the risk of litigation, and undermining public trust in the PSRB's decision-making process.

4. How the temporary action will avoid or mitigate these consequences:

The temporary rule will resolve the logical disconnect between the criteria for entering PSRB jurisdiction and the standards for maintaining it. The rule explicitly clarifies that dangerousness can be rendered by a combination of factors—both qualifying and non-qualifying conditions—rather than being solely attributable to a qualifying mental disorder, which is consistent with the Oregon Supreme Court's decision in Meiser (2024). Without the rule change, there is a potential argument that although a combination of factors, including a qualifying mental disorder and other non-qualifying conditions, may have contributed to the offense for which an individual qualified for the insanity defense, the person could later argue that their dangerousness is not solely caused by the qualifying mental disorder. By

EXHIBIT 1

clarifying that dangerousness may be attributed to a combination of factors, the temporary rule effectively closes this potential loophole. Importantly, the rule also preserves the PSRB's longstanding practice of maintaining jurisdiction over individuals affected by both qualifying and non-qualifying conditions. However, it does not allow the Board to maintain jurisdiction over individuals whose dangerousness is solely caused by non-qualifying conditions, thereby ensuring that the rule does not overreach.

In addition, the temporary rule directly addresses concerns raised in the lawsuit regarding the perceived removal of the connection between a qualifying mental disorder and dangerousness. By re-establishing a clear framework for assessing this critical relationship, the rule resolves this legal challenge, providing clarity and reducing the risk of costly litigation. This proactive step helps mitigate the financial and procedural burdens associated with the lawsuit, ensuring that the PSRB's decisions remain legally sound, consistent with case law, and aligned with its mission to protect public safety while safeguarding individual rights.

---

DOCUMENTS RELIED UPON, AND WHERE THEY ARE AVAILABLE:

State v. Meiser, 372 Or 438 (2024)
Rinne v. PSRB, 326 Or App 777 (2023)

---

AMEND: 859-030-0010

RULE TITLE: Jurisdiction of Persons under the PSRB/Length of Jurisdiction

RULE SUMMARY: This rule removes language no longer relevant since the sunsetting of the State Hospital Review Panel. This rule clarifies criteria the Board applies to maintain jurisdiction over clients adjudicated guilty except for insanity. This rule applies State v. Meiser, 372 Or 438, 440 (2024).

RULE TEXT:

(1) In accordance with ORS 161.325, the Board will take jurisdiction over persons adjudged by the court to be guilty except for insanity and who present a substantial danger to others.
(2) The period of jurisdiction of under the Board will be that sentence ordered by the court that places the person under PSRB jurisdiction.
(3) The Board will maintain jurisdiction over persons who are legally placed under its jurisdiction by any court of the State of Oregon and who continue to meet the following jurisdictional criteria:
(a) The person is affected by a qualifying mental disorder, which may include one that is not currently active, but with reasonable medical probability, may occasionally become active.
(b) The person's qualifying mental disorder, when active, renders them a substantial danger to others.
(A) A qualifying mental disorder may be the sole factor that renders a person a substantial danger to others; or
(B) A qualifying mental disorder may combine with another condition to render the person a substantial danger to others and need not be sufficient on its own to render the person a substantial danger to others.
(4) Judgment orders placing individuals under Board jurisdiction must:
(a) Indicate whether the court finds the individual is a proper subject for conditional release, and if so, that the procedures outlined in OAR 859-070-0005 and ORS 161.327 have been completed.
(b) Identify the length of Board jurisdiction over the individual;
(c) Any supervisory or other special orders the court delivered with its judgment.
(5) If the court's order is unclear or is missing information required by ORS 161.325 or ORS 161.327, the Board may seek clarification on the matter from the court.
(6) The Board will not retain jurisdiction over persons if the court order places the person under the Board only because of a judgment of guilty except for insanity for a probation violation. In order for the Board to retain jurisdiction, the person must be placed under the Board's jurisdiction for the initial offense.
(7) The Board's Adult Panel will accept jurisdiction of remanded youth who are found Guilty Except for Insanity (GEI) in

adult court and placed under the Board's Adult Panel Jurisdiction. For rules regarding adjudicated youth who are found Responsible Except for Insanity (REI) in juvenile court and placed under the Board's Juvenile Panel, see OAR 859, Divisions 501 through 600.

(8) Upon receipt of the judgment order placing individuals under Board jurisdiction the individual shall have their end of jurisdiction date calculated by Board staff within 30 days of receipt of the judgment order.

(a) Board staff shall apply any credit for time served that is indicated in the judgment order.

(b) If the judgment order states that credit for time served shall be applied but does not indicate the amount, Board staff shall apply credit for time served for:

(A) Time spent in any correctional facility or jail for the offense or conduct for which the person was placed under the Board's jurisdiction, verified by a law enforcement agency; and

(B) Time spent in custody of the Oregon Health Authority at a state mental hospital or on a mental health hold at a secure facility.

STATUTORY/OTHER AUTHORITY: ORS 161.387

STATUTES/OTHER IMPLEMENTED: ORS 161.387, ORS 161.325 - ORS 161.351

EXHIBIT 1

OFFICE OF THE SECRETARY OF STATE
TOBIAS READ
SECRETARY OF STATE

MICHAEL KAPLAN
DEPUTY SECRETARY OF STATE



ARCHIVES DIVISION
STEPHANIE CLARK
DIRECTOR

800 SUMMER STREET NE
SALEM, OR 97310
503-373-0701

## PERMANENT ADMINISTRATIVE ORDER

**PSRB 2-2025**
CHAPTER 859
**PSYCHIATRIC SECURITY REVIEW BOARD**

**FILED**

07/31/2025 12:34 AM
ARCHIVES DIVISION
SECRETARY OF STATE
& LEGISLATIVE COUNSEL

FILING CAPTION: Amending jurisdictional criteria and removing reference to SHRP.\

EFFECTIVE DATE: 07/31/2025

AGENCY APPROVED DATE: 07/30/2025

CONTACT: Alison Bort
503-229-5596
alison.bort@psrb.oregon.gov

6400 SE Lake Road
Suite 375
Portland, OR 97222

Filed By:
Alison Bort
Rules Coordinator

AMEND: 859-030-0010

REPEAL: Temporary 859-030-0010 from PSRB 1-2025

RULE TITLE: Jurisdiction of Persons under the PSRB/Length of Jurisdiction

NOTICE FILED DATE: 04/27/2025

RULE SUMMARY: This rule removes language no longer relevant since the sunsetting of the State Hospital Review Panel. This rule clarifies criteria the Board applies to maintain jurisdiction over clients adjudicated guilty except for insanity. This rule applies State v. Meiser, 372 Or 438, 440 (2024).

RULE TEXT:

(1) In accordance with ORS 161.325, the Board will take jurisdiction over persons adjudged by the court to be guilty except for insanity and who present a substantial danger to others.

(2) The period of jurisdiction of under the Board will be that sentence ordered by the court that places the person under PSRB jurisdiction.

(3) The Board will maintain jurisdiction over persons who are legally placed under its jurisdiction by any court of the State of Oregon and who continue to meet the following jurisdictional criteria:

(a) The person is affected by a qualifying mental disorder, which may include one that is not currently active, but with reasonable medical probability, may occasionally become active.

(b) The person's qualifying mental disorder, when active, renders them a substantial danger to others.

(A) A qualifying mental disorder may be the sole factor that renders a person a substantial danger to others; or

(B) A qualifying mental disorder may combine with another condition to render the person a substantial danger to others and need not be sufficient on its own to render the person a substantial danger to others.

(4) Judgment orders placing individuals under Board jurisdiction must:

(a) Indicate whether the court finds the individual is a proper subject for conditional release, and if so, that the procedures outlined in OAR 859-070-0005 and ORS 161.327 have been completed.

(b) Identify the length of Board jurisdiction over the individual;

(c) Any supervisory or other special orders the court delivered with its judgment.

(5) If the court's order is unclear or is missing information required by ORS 161.325 or ORS 161.327, the Board may seek clarification on the matter from the court.

EXHIBIT 1

(6) The Board will not retain jurisdiction over persons if the court order places the person under the Board only because of a judgment of guilty except for insanity for a probation violation. In order for the Board to retain jurisdiction, the person must be placed under the Board's jurisdiction for the initial offense.

(7) The Board's Adult Panel will accept jurisdiction of remanded youth who are found Guilty Except for Insanity (GEI) in adult court and placed under the Board's Adult Panel Jurisdiction. For rules regarding adjudicated youth who are found Responsible Except for Insanity (REI) in juvenile court and placed under the Board's Juvenile Panel, see OAR 859, Divisions 501 through 600.

(8) Upon receipt of the judgment order placing individuals under Board jurisdiction the individual shall have their end of jurisdiction date calculated by Board staff within 30 days of receipt of the judgment order.

(a) Board staff shall apply any credit for time served that is indicated in the judgment order.

(b) If the judgment order states that credit for time served shall be applied but does not indicate the amount, Board staff shall apply credit for time served for:

(A) Time spent in any correctional facility or jail for the offense or conduct for which the person was placed under the Board's jurisdiction, verified by a law enforcement agency; and

(B) Time spent in custody of the Oregon Health Authority at a state mental hospital or on a mental health hold at a secure facility.

STATUTORY/OTHER AUTHORITY: ORS 161.387

STATUTES/OTHER IMPLEMENTED: ORS 161.387, ORS 161.325 - ORS 161.351

EXHIBIT 1

EXHIBIT 2

PRESTON BERMAN
2600 Center St. NE
Salem, OR 97301-2669
Telephone: (503) 947-3764

Plaintiff, appearing Pro Se

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **PRESTON BERMAN**, | Case No: 6:24-cv-01127-MTK |
| Plaintiff, | **[PROPOSED] SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| | **42 U.S.C. § 1983 – FOURTEENTH AMENDMENT DUE PROCESS** |
| **PSYCHIATRIC SECURITY REVIEW BOARD; ALISON BORT**, in her official capacity as Executive Director of the Oregon Psychiatric Security Review Board, | |
| | **TITLE II OF THE AMERICANS WITH DISABILITIES ACT (INTEGRATION MANDATE)** |
| Defendant. | |

1 - SECOND AMENDED COMPLAINT

EXHIBIT 2

## I. NATURE OF THE ACTION AND RELIEF SOUGHT

1. This is a civil rights and disability discrimination action brought under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12131–12134). Plaintiff does not challenge the validity of their original Guilty Except for Insanity (GEI) adjudication or the fact that they are presently subject to the jurisdiction of the Oregon Psychiatric Security Review Board (PSRB). Instead, they challenge the standards and rules the PSRB now uses to decide whether its civil jurisdiction may continue.

2. In particular, Plaintiff challenges OAR 859-030-0010(3)(b)(B) and its predecessors, which permit continued PSRB jurisdiction when a qualifying mental disorder "may combine with another condition" and "need not be sufficient on its own" to render a person a substantial danger to others. These rules remove the constitutionally required causal nexus between a qualifying mental disorder and current dangerousness that is reflected in ORS 161.346(1)(a) and in substantive due process decisions such as *Foucha v. Louisiana*, 504 U.S. 71 (1992).

3. Plaintiff alleges that this weakened causal-nexus standard violates the Due Process Clause of the Fourteenth Amendment, both on its face and as applied in their own case. Plaintiff further alleges that continued jurisdiction and segregation under this standard, despite clinical findings that they can safely live in the community with ordinary supports, violates Title II's integration mandate by unnecessarily segregating them on the basis of disability.

4. Plaintiff seeks only prospective declaratory and injunctive relief. Plaintiff does not seek money damages. Plaintiff does not seek an order from this Court directing their

2 - SECOND AMENDED COMPLAINT

EXHIBIT 2

immediate discharge from PSRB jurisdiction, nor an order that directly shortens the maximum term of that jurisdiction.

5. Plaintiff instead seeks a declaration that the current PSRB dangerousness standard and its application to Plaintiff are unconstitutional and inconsistent with Title II, and an injunction requiring Defendant, in their official capacity, to ensure that future PSRB jurisdictional reviews of Plaintiff apply a constitutionally valid causal-nexus standard consistent with ORS 161.346(1)(a) and *Foucha v. Louisiana*, 504 U.S. 71 (1992), and comply with the ADA's integration mandate.

6. Consistent with *Wilkinson v. Dotson*, 544 U.S. 74 (2005), and *Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016) (en banc), success in this action would not necessarily result in Plaintiff's immediate release or a shorter period of custody. A favorable judgment would require only that the PSRB reconsider Plaintiff's jurisdiction under lawful standards and procedures. Any change to Plaintiff's custody status would occur, if at all, through future PSRB decision making applying those corrected standards, not through a direct federal order of release.

## II. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including the Due Process Clause of the Fourteenth Amendment, 42 U.S.C. § 1983, and Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134.

8. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) because Plaintiff seeks to redress the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States.

3 - SECOND AMENDED COMPLAINT

EXHIBIT 2

9.  Plaintiff seeks declaratory relief under 28 U.S.C. § 2201 and further necessary or appropriate relief under 28 U.S.C. § 2202. Plaintiff's Title II claims are enforceable through 42 U.S.C. § 12133.

10. Defendant Psychiatric Security Review Board is a state agency and "public entity" within the meaning of Title II of the ADA, 42 U.S.C. § 12131(1), and is subject to suit for the prospective declaratory and injunctive relief sought here. Defendant Alison Bort is sued only in her official capacity as Executive Director of the PSRB. Plaintiff seeks solely prospective declaratory and injunctive relief against Defendants to halt the ongoing and future enforcement of unconstitutional standards and rules that govern PSRB jurisdictional decisions.

11. With respect to Plaintiff's Fourteenth Amendment claim under 42 U.S.C. § 1983, this action is authorized by the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), because Plaintiff seeks prospective relief against a state official in her official capacity to end an ongoing violation of federal law. Plaintiff does not seek money damages in this action.

12. Because Plaintiff seeks only prospective declaratory and injunctive relief, brings their Title II claims against a public entity, and brings their § 1983 claim against a state official in her official capacity under *Ex parte Young*, the Eleventh Amendment does not bar the claims asserted in this Complaint. See, for example, *Tennessee v. Lane*, 541 U.S. 509 (2004); *United States v. Georgia*, 546 U.S. 151 (2006); *Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791 (9th Cir. 2004).

13. Venue is proper in the United States District Court for the District of Oregon under 28 U.S.C. § 1391(b)(1) and (2). Defendants reside in this District for venue purposes, and a

4 - SECOND AMENDED COMPLAINT

EXHIBIT 2

substantial part of the events and omissions giving rise to Plaintiff's claims, including PSRB jurisdictional decisions and enforcement of the challenged rules, occurred in Marion County, Oregon.

## III. PARTIES

14. Plaintiff Preston Berman ("Plaintiff") is a resident of the State of Oregon. Plaintiff has been under the civil jurisdiction of the Oregon Psychiatric Security Review Board ("PSRB") since December 2010 following a Guilty Except for Insanity (GEI) adjudication under ORS 161.336.

15. Plaintiff remains subject to PSRB custody and control, including during periods of conditional release. Even while on conditional release, Plaintiff is subject to PSRB-imposed conditions and the PSRB's authority to revoke release and return Plaintiff to inpatient confinement.

16. Defendant Psychiatric Security Review Board ("PSRB") is a state agency and public entity created under Oregon law to supervise and review the custody, conditional release, and discharge of individuals found GEI. PSRB exercises civil jurisdiction over Plaintiff and is responsible for promulgating and applying the Oregon Administrative Rules that govern the standards for continued jurisdiction, conditional release, and discharge, including OAR 859-030-0010(3)(b)(B) and its predecessors. PSRB is a "public entity" within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(1). PSRB is named as a defendant with respect to Plaintiff's claims under Title II of the ADA.

EXHIBIT 2

17. Defendant Alison Bort ("Defendant Bort") is the Executive Director of the Oregon Psychiatric Security Review Board. Defendant Bort is sued only in her official capacity.

18. As Executive Director, Defendant Bort is responsible for the administrative and procedural aspects of PSRB operations, including the implementation, administration, and enforcement of the Oregon Administrative Rules and standards challenged in this action, and for advising PSRB members and staff regarding compliance with state and federal law.

19. At all relevant times, Defendant Bort has acted and continues to act under color of state law within the meaning of 42 U.S.C. § 1983, and as an official of a "public entity" within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(1). Plaintiff asserts their Fourteenth Amendment claim under 42 U.S.C. § 1983 against Defendant Bort in her official capacity for prospective declaratory and injunctive relief, and asserts their Title II claims against PSRB and Defendant Bort in her official capacity.

## IV. STATUTORY AND REGULATORY BACKGROUND

### A. Oregon GEI Scheme and PSRB Jurisdiction

20. The Oregon Guilty Except for Insanity (GEI) framework is a civil commitment and treatment regime, not a criminal sentencing scheme. Under ORS 161.336, 161.337, and 161.341, individuals found GEI are placed under the civil jurisdiction of the Psychiatric Security Review Board (PSRB) for a maximum jurisdictional term set by statute and the court's judgment.

21. Within that civil framework, the PSRB has authority to commit an individual to a state hospital or other secure treatment setting, to place an individual on conditional release in

6 - SECOND AMENDED COMPLAINT

EXHIBIT 2

the community under PSRB supervision, or to discharge the individual from PSRB jurisdiction when the statutory criteria are met. PSRB jurisdiction continues in full force whether a person is hospitalized or on conditional release.

**B. Discharge Standard under ORS 161.346**

22. ORS 161.346(1)(a) conditions continued PSRB jurisdiction on two present findings: that the individual has a qualifying mental disorder and that the individual is a substantial danger to others. Proper operation of this statute requires a present causal nexus between the qualifying disorder and current dangerousness, consistent with substantive due process principles recognized in *Foucha v. Louisiana*, 504 U.S. 71 (1992). Under *Foucha*, an insanity acquittee may be held only so long as they are both mentally ill and dangerous; once dangerousness is no longer meaningfully tied to an active mental illness, continued civil commitment violates due process.

23. Oregon's statutory scheme, including ORS 161.346, reflects this requirement by tying PSRB jurisdiction to present substantial danger grounded in a qualifying mental disorder, rather than to historical risk, administrative concerns, or speculative future danger in the absence of current disorder-linked risk.

**C. Prior and Current Dangerousness Definitions in PSRB Rules**

24. The PSRB has implemented ORS 161.346 through administrative rules that define "danger," "substantial danger," and the causal relationship between a qualifying mental disorder and current risk.

7 - SECOND AMENDED COMPLAINT

EXHIBIT 2

25. The prior version of OAR 859-010-0005, adopted in PSRB Permanent Administrative Order 1-2023 (amend filed April 19, 2023, effective April 21, 2023), defined dangerousness in terms of behavior that placed others at risk of physical injury "because of the person's qualifying mental disorder," reflecting a strong causal link between present dangerousness and an active qualifying disorder. See OAR 859-010-0005 (PSRB 1-2023, amend filed 04/19/2023, effective 04/21/2023), available at:

https://secure.sos.state.or.us/oard/viewReceiptTRIM.action?ptId=9427150

26. In 2024, the PSRB adopted Permanent Administrative Order PSRB 1-2024, again amending OAR 859-010-0005 and altering how dangerousness and the qualifying mental disorder are linked in the rule text. See OAR 859-010-0005 (Permanent Administrative Order PSRB 1-2024, effective April 5, 2024), available at:

https://records.sos.state.or.us/ORSOSWebDrawer/Recordhtml/10142479

27. In 2025, the PSRB further amended and recodified these standards at OAR 859-030-0010 through Temporary Administrative Order PSRB 1-2025 (temporary amend filed March 10, 2025, effective March 10, 2025 through September 5, 2025), and then through Permanent Administrative Order PSRB 2-2025 (amend filed July 31, 2025, effective July 31, 2025). See OAR 859-030-0010 (PSRB 1-2025, temporary amend filed 03/10/2025, effective 03/10/2025 through 09/05/2025), available at:

https://records.sos.state.or.us/ORSOSWebDrawer/Recordhtml/10876066

and OAR 859-030-0010 (PSRB 2-2025, amend filed 07/31/2025, effective 07/31/2025), available at:

https://records.sos.state.or.us/ORSOSWebDrawer/Recordhtml/11541512

28. The current rule, OAR 859-030-0010(3)(b)(B), provides that a qualifying mental disorder "may combine with another condition to render the person a substantial danger to others and need not be sufficient on its own to render the person a substantial danger to others." By allowing continued PSRB jurisdiction where a qualifying mental disorder need not be sufficient on its own, OAR 859-030-0010(3)(b)(B) permits jurisdiction to rest primarily on non-qualifying factors so long as the qualifying disorder can be characterized as "combining" with them in some reinforcing way. This standard allows continued jurisdiction even when non-qualifying conditions or circumstances are the primary drivers of any risk and the qualifying disorder is only incidental, thereby eroding the required causal nexus between current mental illness and present dangerousness that ORS 161.346 and the Fourteenth Amendment demand, as reflected in *Foucha v. Louisiana*, 504 U.S. 71 (1992).

**D. Title II of the ADA and the Integration Mandate**

29. Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134, applies to "public entities," including state agencies such as the PSRB. 42 U.S.C. § 12131(1). Title II prohibits public entities from excluding qualified individuals with disabilities from participation in, or denying them the benefits of, services, programs, or activities, or otherwise subjecting them to discrimination by reason of disability. 42 U.S.C. § 12132.

30. The Department of Justice's implementing regulations require public entities to administer services, programs, and activities "in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). In *Olmstead v. L.C.*, 527 U.S. 581 (1999), the Supreme Court held that unjustified institutionalization of

9 - SECOND AMENDED COMPLAINT

EXHIBIT 2

individuals with disabilities constitutes discrimination under Title II when (1) treatment professionals determine that community-based services are appropriate, (2) the individual does not oppose such community placement, and (3) placement in the community can be reasonably accommodated.

31. Within this statutory and regulatory framework, PSRB jurisdictional decisions, conditional release standards, and discharge criteria must be applied in a manner that respects both the constitutional requirement of a present disorder-linked danger and Title II's mandate that services be delivered in the most integrated setting appropriate to the individual's needs.

**E. Pattern in PSRB jurisdiction and discharge decisions**

32. E. Pattern in PSRB jurisdiction and discharge decisions

33. Oregon appellate courts have repeatedly reversed PSRB decisions that continued jurisdiction or refused discharge despite weak evidence of current, disorder-linked dangerousness.

34. In *Haidar v. Psychiatric Sec. Review Bd.*, 324 Or. App. 129 (2023), the Court of Appeals reversed and remanded a PSRB order that refused to discharge a woman found GEI in 1994 and instead continued her conditional release despite evidence that she no longer presented a substantial danger to others. The petitioner in *Haidar* had advanced dementia, schizophrenia controlled with medication, severe cognitive decline, and such profound physical limitations that she required help with basic daily activities and was essentially confined to a wheelchair or bed. Both of her treating professionals testified that she did

10 - SECOND AMENDED COMPLAINT

EXHIBIT 2

not pose a substantial danger. The Oregon Court of Appeals held that PSRB's order lacked substantial evidence and substantial reason because it relied on outdated records and speculative concerns instead of grappling with her current condition and the discharge standard in ORS 161.351. *Haidar* shows how the PSRB can continue jurisdiction over a profoundly debilitated, non-ambulatory person even when all treating experts agree that she does not present an actual danger to others.

35. In *Walters v. Psychiatric Sec. Review Bd.*, 341 Or. App. 41, 574 P.3d 49 (2025), the Oregon Court of Appeals considered a five-year jurisdictional hearing where every treating clinician, including PSRB's own treating psychiatrist, testified that Walters no longer had any qualifying mental disorder and that a past adjustment disorder had fully resolved. The PSRB nevertheless found a current qualifying disorder based on old records. The Oregon Court of Appeals held there was no substantial evidence for that finding and reversed. *Walters* illustrates that even when the state's own experts say there is no longer a qualifying mental illness, the PSRB can still cling to jurisdiction on the basis of stale information.

36. In *Norgren v. Psychiatric Sec. Review Bd.*, 344 Or. App. 617 (2025), the Oregon Court of Appeals reversed PSRB's refusal to discharge Norgren where he had been symptom-free for years, was living safely in the community, and the Board relied on a speculative chain of "what if" events (for example, what if he stopped medications, relapsed, became manic, and then dangerous) instead of concrete evidence that his current condition made him a substantial danger to others. *Norgren* shows the same pattern of hypothetical future-risk reasoning being used to avoid discharge, even when real-world experience in the community is positive.

11 - SECOND AMENDED COMPLAINT

EXHIBIT 2

37. In *Drew v. Psychiatric Sec. Review Bd.*, 322 Or. 491, 909 P.2d 1211 (1996), the Oregon Supreme Court vacated a PSRB order continuing jurisdiction. Although the record contained evidence that could support dangerousness, the Court held that the Board failed to logically connect those facts to its conclusion. Drew is often cited for the rule that PSRB cannot just point to past violence or generalized risk and must provide substantial reason linking current facts to present "substantial danger."

38. Taken together, these cases suggest a repeated pattern in which PSRB resists discharge even when the record shows either no current qualifying mental disorder or no meaningful current dangerousness, including situations where the state's own clinicians support release.

39. From Plaintiff's perspective as someone currently under PSRB jurisdiction, these cases and the recent rule changes described above point in the same direction. The legal standards are drifting toward broader, more speculative definitions of dangerousness at the same time the Board is repeatedly reversed for refusing to discharge people whom its own experts describe as non-dangerous or no longer mentally ill.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff's GEI Commitment and PSRB Jurisdiction

40. On 12/8/10, Plaintiff was adjudicated Guilty Except for Insanity (GEI) in the Deschutes County Oregon Circuit Court and was placed under the civil jurisdiction of the Oregon Psychiatric Security Review Board (PSRB) for a maximum term of 20 Years pursuant to ORS 161.336.

12 - SECOND AMENDED COMPLAINT

EXHIBIT 2

41. Following the GEI adjudication, Plaintiff was committed to the Oregon State Hospital in Salem, Oregon, under PSRB jurisdiction and received inpatient psychiatric treatment in a secure hospital setting.

42. After a period of hospitalization, Plaintiff was placed on conditional release under PSRB supervision on or about December 2015. While on conditional release, Plaintiff has remained subject to PSRB jurisdiction and the PSRB's authority to impose conditions, monitor compliance, and revoke release.

43. PSRB jurisdiction over Plaintiff continues in full effect whether Plaintiff is physically located at the Oregon State Hospital, another supervised facility, or in the community on conditional release. The civil disabilities, restrictions, and restraints imposed by PSRB jurisdiction are ongoing.

44. Plaintiff does not in this action challenge the validity of their original GEI adjudication, the criminal judgment that resulted in GEI status, or the initial decision to place them under PSRB jurisdiction. Plaintiff instead challenges only the standards and rules that the PSRB now uses to decide whether its civil jurisdiction over Plaintiff may continue.

**B. Conditions and Restraints of PSRB Custody, Including Conditional Release**

45. At all times relevant to this Complaint, PSRB jurisdiction has imposed significant restraints on Plaintiff's liberty, whether Plaintiff is physically housed at the Oregon State Hospital or living in the community on conditional release. PSRB jurisdiction functions as custody even when Plaintiff is not in a locked hospital unit.

13 - SECOND AMENDED COMPLAINT

EXHIBIT 2

46. While on conditional release, Plaintiff is subject to PSRB-imposed curfews and residence restrictions. Plaintiff may live only at locations approved by PSRB and/or its designees and may not change residence without prior authorization.

47. PSRB jurisdiction also imposes travel restrictions. Plaintiff's movements outside the approved residence are limited to locations and purposes authorized by PSRB, and out-of-area or out-of-state travel requires specific PSRB approval and may be denied or revoked at any time.

48. Plaintiff is prohibited or restricted from driving a motor vehicle under PSRB conditions, regardless of their ability to obtain a driver's license under ordinary state law. PSRB conditions also subject Plaintiff to financial oversight, including monitoring of bank accounts, spending, and access to funds, to a degree not imposed on similarly situated people without PSRB jurisdiction.

49. Plaintiff must comply with mandatory psychiatric treatment, including prescribed medications, therapy, and other conditions of care, as directed by PSRB-approved providers. Noncompliance with treatment conditions can result in immediate modification or revocation of conditional release.

50. PSRB retains unilateral authority to revoke Plaintiff's conditional release at any time, based on its own assessment of alleged noncompliance or perceived risk, and to order Plaintiff's immediate return to inpatient confinement at the Oregon State Hospital or another secure facility without ordinary criminal process.

51. These restrictions—curfew, residence and travel limits, driving bans, financial oversight, mandatory treatment conditions, and the constant threat of immediate revocation and rehospitalization—are the concrete restraints that define PSRB custody for Plaintiff. They

EXHIBIT 2

persist so long as PSRB jurisdiction continues, regardless of Plaintiff's physical placement, and they constitute the ongoing injury Plaintiff challenges in this action.

**C. Clinical Stabilization and Low-Risk Findings Since 2022**

52. Beginning around June 2022, Plaintiff experienced a substantial period of clinical stability. For an extended period, Plaintiff engaged in treatment, took prescribed medications, and used coping skills effectively, with no episodes of severe mania or psychosis that resulted in harm to others.

53. In or about June 2025, Plaintiff experienced a manic episode that lasted approximately 2.5 months. During this episode, Plaintiff's mood and behavior became destabilized, and Plaintiff was reverse-transferred from a less restrictive setting back to the Oregon State Hospital. The episode involved property damage and rule violations, but at no time did Plaintiff engage in physical aggression toward other people or make credible threats of serious violence against others.

54. Following this manic episode, Plaintiff's treatment team adjusted Plaintiff's medication regimen and treatment plan. Plaintiff's symptoms subsequently came back under control, and Plaintiff returned to a clinically stable baseline with renewed insight, treatment engagement, and adherence to prescribed medications.

55. At the time of the PSRB proceedings relevant to this Complaint, Plaintiff's then-treating psychiatrist, Dr. James Peykanu, reported that Plaintiff's qualifying mental disorder was well controlled and that Plaintiff's current risk of violence toward others was low and manageable with ordinary outpatient treatment and supervision.

56. In or about February 2025, a formal violence risk assessment was completed for Plaintiff (the "February 2025 Violence Risk Assessment"). That assessment rated Plaintiff as

15 - SECOND AMENDED COMPLAINT

EXHIBIT 2

presenting a low current risk of violence under community conditions with appropriate supports in place.

57. Plaintiff's Oregon State Hospital treatment team, including Dr. Peykanu and other clinical providers, has recommended community-based placement rather than continued hospital-level confinement, concluding that Plaintiff's treatment needs and risk profile can be safely addressed in a less restrictive, integrated setting.

58. At the time of the PSRB proceedings relevant to this Complaint, the clinical evidence available to PSRB—including Plaintiff's overall stability since 2022 apart from a time-limited manic episode without aggression toward others, Dr. Peykanu's opinions, and the February 2025 Violence Risk Assessment—demonstrated that Plaintiff's current risk to others was low and could be managed in the community with ordinary outpatient services and supervision.

**D. PSRB Rule Changes and Application to Plaintiff**

59. As described above in Section IV, the PSRB's 2023 rule, OAR 859-010-0005 (PSRB 1-2023), defined "danger," "substantial danger," or "dangerousness" in terms that required risk to others "because of the person's qualifying mental disorder," reflecting a clear causal nexus between current dangerousness and an active qualifying disorder.

60. In 2024 and 2025, through Permanent Administrative Order PSRB 1-2024 and subsequent temporary and permanent amendments recodified at OAR 859-030-0010, the PSRB weakened that causal nexus. The current rule, OAR 859-030-0010(3)(b)(B), permits continued PSRB jurisdiction when a qualifying mental disorder "may combine

16 - SECOND AMENDED COMPLAINT

EXHIBIT 2

with another condition" and "need not be sufficient on its own" to render a person a substantial danger to others.

61. On or about February 26, 2025, the PSRB conducted a jurisdictional review hearing for Plaintiff (the "February 26, 2025 Hearing"). That hearing was conducted under the then-operative 2024 version of the PSRB's rules, including OAR 859-010-0005 as amended by Permanent Administrative Order PSRB 1-2024, which had already weakened the causal nexus between a qualifying mental disorder and dangerousness compared to the 2023 rule.

62. On March 10, 2025, after the February 26, 2025 Hearing but before the PSRB issued its written decision, the PSRB promulgated Temporary Administrative Order PSRB 1-2025, recodifying the dangerousness standard at OAR 859-030-0010 and adopting the current language of OAR 859-030-0010(3)(b)(B), under which a qualifying mental disorder "may combine with another condition" and "need not be sufficient on its own" to render a person a substantial danger to others.

63. When the PSRB issued its written order on or about April 4, 2025, the recodified standard in OAR 859-030-0010, including OAR 859-030-0010(3)(b)(B), was in effect and governed the Board's continued jurisdictional decision as applied to Plaintiff.

64. The evidence before the PSRB also included the February 2025 Violence Risk Assessment, which rated Plaintiff's current violence risk as low under community conditions with appropriate supports in place, and treatment team recommendations supporting community-based placement rather than continued hospital-level confinement.

17 - SECOND AMENDED COMPLAINT

EXHIBIT 2

65. At the February 26, 2025 Hearing, Plaintiff contested any finding that they were presently substantially dangerous to others, relying on the hearing record and the testimony of Dr. James Peykanu. Plaintiff emphasized that Dr. Peykanu's testimony and the February 2025 Violence Risk Assessment showed that Plaintiff's qualifying mental disorder was well controlled, that their current violence risk was low, and that their risk could be safely managed in the community with appropriate outpatient supports.

66. On or about April 4, 2025, the PSRB issued a written order following the February 26, 2025 Hearing (the "April 4, 2025 Order"). The April 4, 2025 Order continued PSRB jurisdiction over Plaintiff and declined to grant jurisdictional discharge.

67. In the April 4, 2025 Order, the PSRB justified continued jurisdiction primarily on the grounds that Plaintiff lacked a finalized community placement plan and that, in the Board's view, Plaintiff might pose a risk if PSRB supervision and conditions were removed in the future. The Order emphasized concerns about hypothetical future risk and the absence of a completed community plan, rather than specific, current, disorder-linked behavior demonstrating substantial danger to others.

68. The April 4, 2025 Order did not make an express finding that Plaintiff was presently a substantial danger to others because of a qualifying mental disorder. Instead, it relied on generalized and speculative concerns about what might occur if supervision were relaxed or removed, in combination with non-qualifying factors and administrative uncertainties about placement.

18 - SECOND AMENDED COMPLAINT

EXHIBIT 2

69. By applying OAR 859-030-0010(3)(b)(B) in this manner, the PSRB continued jurisdiction over Plaintiff without identifying a present causal nexus between Plaintiff's qualifying mental disorder and current substantial dangerousness. As a result, Plaintiff remains subject to PSRB custody, restrictions, and segregation based on a weakened standard that allows non-qualifying factors and speculative future risk to substitute for the constitutionally required disorder-linked dangerousness.

**E. Ongoing Application of OAR 859-030-0010 to Plaintiff**

70. OAR 859-030-0010, including OAR 859-030-0010(3)(b)(B), now governs Plaintiff's case and will govern all future PSRB jurisdictional reviews and discharge decisions for as long as Plaintiff remains under PSRB jurisdiction.

71. Under OAR 859-030-0010(3)(b)(B), the PSRB may continue jurisdiction when a qualifying mental disorder "may combine with another condition to render the person a substantial danger to others and need not be sufficient on its own to render the person a substantial danger to others." This standard permits the PSRB to base continued custody on a mix of non-qualifying factors and speculative concerns, so long as a historical or residual qualifying diagnosis is present in some reinforcing way.

72. As applied to Plaintiff, this standard allows the PSRB to maintain jurisdiction even where non-qualifying factors such as lack of a finalized community placement, administrative uncertainty, or generalized fears about what might occur if supervision were reduced are the primary drivers of any perceived risk, and where Plaintiff's qualifying mental disorder is well controlled and plays at most an incidental role in current risk.

19 - SECOND AMENDED COMPLAINT

EXHIBIT 2

73. OAR 859-030-0010(3)(b)(B) does not require the PSRB to make, and in Plaintiff's case the PSRB has not made, a meaningful finding that Plaintiff is presently a substantial danger to others *because of* a qualifying mental disorder, as required by ORS 161.346(1)(a) and by substantive due process principles reflected in *Foucha v. Louisiana*, 504 U.S. 71 (1992).

74. Unless enjoined, Defendants will continue to apply OAR 859-030-0010(3)(b)(B) to Plaintiff in all future PSRB reviews, allowing continued PSRB custody and segregation based on a weakened, non-causal standard that permits indefinite jurisdiction without present disorder-linked dangerousness.

75. The ongoing existence and application of this standard to Plaintiff's case, now and in future PSRB proceedings, is the core injury challenged in this action. Plaintiff seeks prospective declaratory and injunctive relief to prevent Defendants from continuing to apply OAR 859-030-0010(3)(b)(B) and similar non-causal standards to Plaintiff, and to require that any future PSRB jurisdictional reviews use a constitutionally valid causal-nexus standard consistent with ORS 161.346(1)(a), *Foucha v. Louisiana*, 504 U.S. 71 (1992), and Title II's integration mandate.

### F. State Judicial Review and Relationship to this Case

76. On May 22, 2025, Plaintiff filed a petition for judicial review in the Oregon Court of Appeals challenging the PSRB's April 4, 2025 order continuing jurisdiction. That proceeding is captioned *Berman v. Psychiatric Security Review Board*, No. A187609 (Or. Ct. App.).

77. In the Oregon Court of Appeals proceeding, Plaintiff contests the PSRB's findings and decision in the April 4, 2025 order as applied in that specific hearing, including whether

EXHIBIT 2

the evidence supported the Board's conclusions and whether the Board properly applied

Oregon law to Plaintiff's case.

78. This federal action does not seek to overturn any judgment of the Oregon Court of

Appeals or to enjoin the state-court proceeding. Plaintiff does not ask this Court to

vacate, reverse, or otherwise directly disturb any state-court judgment.

79. Instead, in this case Plaintiff challenges the constitutionality of the governing standards

and rules themselves, including OAR 859-030-0010(3)(b)(B) and its predecessors, and

seeks prospective declaratory and injunctive relief under 42 U.S.C. § 1983 and Title II of

the ADA. Plaintiff asks this Court to declare the challenged standards unlawful and to

require Defendants, on a going-forward basis, to apply a constitutionally valid

causal-nexus standard and to comply with Title II's integration mandate in future PSRB

jurisdictional reviews of Plaintiff.

**G. Ongoing Harm**

80. Plaintiff remains under PSRB jurisdiction today, and that jurisdiction continues to be

governed by OAR 859-030-0010, including OAR 859-030-0010(3)(b)(B), which permits

continued custody without a meaningful causal nexus between a qualifying mental

disorder and current substantial danger to others.

81. As a result, Plaintiff continues to live under significant restraints on liberty, including

curfew, residence and travel restrictions, driving bans, financial oversight, mandatory

treatment conditions, and the constant risk of immediate revocation and rehospitalization,

even though clinical evidence shows that Plaintiff's qualifying mental disorder is well

controlled and that their current risk can be safely managed in the community with

ordinary outpatient supports.

21 - SECOND AMENDED COMPLAINT

EXHIBIT 2

82. These ongoing restraints prevent Plaintiff from living, working, and participating in community life in the most integrated setting appropriate to their needs, despite treatment-team support for community-based placement and low current risk, thereby perpetuating unnecessary segregation on the basis of disability.

83. So long as OAR 859-030-0010(3)(b)(B) and its core standard remain in force and are applied to Plaintiff, there is a continuing risk that PSRB jurisdiction will be extended or maintained based on non-qualifying factors and speculative concerns, rather than on present disorder-linked dangerousness as required by ORS 161.346(1)(a) and the Fourteenth Amendment.

84. The ongoing application of this defective standard to Plaintiff's case causes continuing harm to Plaintiff's liberty, autonomy, and integration opportunities and will continue to do so unless Defendants are enjoined from applying OAR 859-030-0010(3)(b)(B) and similar non-causal standards to Plaintiff in future PSRB reviews.

## **VI. CLAIMS FOR RELIEF**

### **COUNT I**
### **Title II of the Americans with Disabilities Act**
(Unjustified Segregation / Integration Mandate)
(Against Defendant Psychiatric Security Review Board and Defendant Bort in her official capacity)

85. Paragraphs 1 through 84 of this Complaint are hereby re-alleged and incorporated by reference.

86. Plaintiff is a person with a disability within the meaning of Title II of the Americans with Disabilities Act. Plaintiff has a serious mental health condition that substantially limits

22 - SECOND AMENDED COMPLAINT

EXHIBIT 2

one or more major life activities, including thinking, concentrating, and regulating mood
and behavior.

87. Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C. §
12131(2) because Plaintiff meets the essential eligibility requirements for participation in,
and receipt of, the services, programs, and activities at issue, with or without reasonable
modifications of rules, policies, or practices.

88. Defendant Psychiatric Security Review Board is a "public entity" within the meaning of
42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104. Defendant Bort, in her official capacity as
Executive Director of the PSRB, is responsible for implementing and enforcing PSRB
policies, rules, and practices, including those challenged in this action.

89. Defendants administer services, programs, and activities within the meaning of Title II,
including, but not limited to: PSRB jurisdictional reviews; hearings concerning
commitment, conditional release, and discharge; conditional release supervision and
conditions; and decisions regarding placement in hospital, secure facilities, or community
settings with associated supports.

90. Through these services, programs, and activities, Defendants determine whether
individuals under PSRB jurisdiction will remain in institutional or highly restrictive
settings, or will receive services in more integrated community settings with appropriate
supports.

91. Plaintiff's treating professionals, including Plaintiff's Oregon State Hospital treatment
team and Plaintiff's then-treating psychiatrist at the time of the February 26, 2025
hearing, have determined that Plaintiff can be safely and appropriately served in a

EXHIBIT 2

community-based setting with standard outpatient mental health supports and supervision, rather than in a hospital-level or equivalently restrictive setting.

92. Plaintiff does not oppose community placement and affirmatively seeks to live and receive services in the community with appropriate outpatient supports and PSRB-approved conditions.

93. Community-based services and supports for Plaintiff can be reasonably accommodated through existing outpatient mental health treatment, PSRB-supervised conditional release, and standard community supports, without a fundamental alteration of Defendants' programs.

94. Despite this clinical consensus and Plaintiff's willingness to accept community-based services, Defendants, acting under OAR 859-030-0010(3)(b)(B) and related standards, continue to enforce PSRB jurisdiction in a manner that unnecessarily segregates Plaintiff and keeps Plaintiff in more restrictive, custodial conditions than are clinically necessary.

95. Under OAR 859-030-0010(3)(b)(B), Defendants may continue jurisdiction where a qualifying mental disorder "may combine with another condition" and "need not be sufficient on its own" to render a person a substantial danger to others. As applied to Plaintiff, this standard allows Defendants to justify continued PSRB custody and restrictive conditions based primarily on non-qualifying factors (such as lack of a finalized community placement or generalized fears about what might occur if supervision were reduced) even when Plaintiff's qualifying mental disorder is well controlled and Plaintiff's current risk is low and manageable in the community.

96. By continuing PSRB jurisdiction over Plaintiff under this weakened standard, and by relying on it to maintain restrictive conditions, Defendants unnecessarily segregate

EXHIBIT 2

Plaintiff in a more restrictive and custodial regime than is clinically indicated, rather than providing services in the most integrated setting appropriate to Plaintiff's needs as required by Title II and 28 C.F.R. § 35.130(d).

97. Defendants' actions and omissions discriminate against Plaintiff by reason of disability. But for Plaintiff's mental health disability and associated GEI status, Plaintiff would not be subject to PSRB's disability-based custodial regime and would not face ongoing institutional-level restrictions despite low current risk and professional recommendations for community-based placement.

98. Defendants' continued enforcement of OAR 859-030-0010(3)(b)(B) and related practices, as applied to Plaintiff, constitute unjustified institutionalization and segregation in violation of Title II's integration mandate as recognized in *Olmstead v. L.C.*, 527 U.S. 581 (1999), and its implementing regulations.

99. As a direct and proximate result of Defendants' violations of Title II, Plaintiff has been and continues to be subjected to unnecessary segregation, loss of liberty, restrictions on community participation, and denial of services in the most integrated setting appropriate to Plaintiff's needs.

100.    Plaintiff is entitled to prospective declaratory and injunctive relief under 42 U.S.C. § 12133 and 28 C.F.R. § 35.130(d), including an order declaring that Defendants' use of OAR 859-030-0010(3)(b)(B) and related standards, as applied to Plaintiff, violates Title II, and requiring Defendants to provide Plaintiff with services, programs, and activities in the most integrated setting appropriate to Plaintiff's needs, consistent with the professional judgment of Plaintiff's treatment providers.

25 - SECOND AMENDED COMPLAINT

EXHIBIT 2

**COUNT II**
**42 U.S.C. § 1983**

Fourteenth Amendment Due Process – Prospective Declaratory and Injunctive Relief
(Against Defendant Bort in her official capacity)

101.     Paragraphs 1 through 100 of this Complaint are hereby re-alleged and incorporated by reference.

102.     This claim is brought under 42 U.S.C. § 1983 against Defendant Bort in her official capacity as Executive Director of the PSRB. At all relevant times, Defendant has acted under color of state law within the meaning of 42 U.S.C. § 1983.

103.     The Fourteenth Amendment to the United States Constitution provides that no State shall deprive any person of life, liberty, or property without due process of law. Plaintiff has a protected liberty interest in freedom from unnecessary civil confinement and state custody, and in being free from continued PSRB jurisdiction when the constitutional conditions for that jurisdiction are no longer present.

104.     Under ORS 161.346(1)(a), PSRB jurisdiction may continue only if a person (1) presently has a qualifying mental disorder and (2) is a substantial danger to others. Properly construed in light of substantive due process principles, this statute requires a present causal nexus between the qualifying mental disorder and current substantial dangerousness. See *Foucha v. Louisiana*, 504 U.S. 71 (1992).

105.     Under *Foucha*, an insanity acquittee may not be held indefinitely once they are no longer both mentally ill and dangerous in a way that justifies continued civil confinement. Continued custody based on historical risk, generalized fear, or non-disorder-related factors violates substantive due process.

26 - SECOND AMENDED COMPLAINT

EXHIBIT 2

106. OAR 859-030-0010(3)(b)(B) provides that a qualifying mental disorder "may combine with another condition to render the person a substantial danger to others and need not be sufficient on its own to render the person a substantial danger to others." This standard governs Plaintiff's case and all of Plaintiff's future PSRB jurisdictional reviews.

107. On its face, OAR 859-030-0010(3)(b)(B) permits continued PSRB jurisdiction when a qualifying mental disorder is not the primary cause of any current risk, so long as it can be said to "combine" with non-qualifying conditions. The rule does not require that present substantial dangerousness be meaningfully caused by an active qualifying mental disorder.

108. By allowing PSRB jurisdiction to rest primarily on non-qualifying factors such as lack of a finalized community placement, administrative uncertainty, or generalized fears about what might occur if supervision were reduced, while a qualifying disorder plays only an incidental role, OAR 859-030-0010(3)(b)(B) fails to ensure the present causal nexus that ORS 161.346(1)(a) and the Fourteenth Amendment demand.

109. As a result, OAR 859-030-0010(3)(b)(B) is unconstitutional on its face. It authorizes continued civil custody and jurisdiction over GEI acquittees even when current dangerousness is not meaningfully caused by a qualifying mental disorder, in violation of substantive due process as reflected in *Foucha v. Louisiana*, 504 U.S. 71 (1992).

110. The rule is also unconstitutional as applied to Plaintiff. At the February 26, 2025 PSRB jurisdictional review hearing, the clinical evidence, including the testimony of Plaintiff's then-treating psychiatrist and the February 2025 Violence Risk Assessment, showed that Plaintiff's qualifying mental disorder was well controlled and that Plaintiff's

27 - SECOND AMENDED COMPLAINT

EXHIBIT 2

current risk of violence toward others was low and manageable in the community with ordinary outpatient supports.

111.    When the PSRB issued its April 4, 2025 order continuing jurisdiction over Plaintiff, OAR 859-030-0010, including OAR 859-030-0010(3)(b)(B), was in effect. In that order, the PSRB did not find that Plaintiff was presently a substantial danger to others because of a qualifying mental disorder. Instead, the PSRB relied primarily on non-qualifying and speculative factors, such as the absence of a finalized community placement plan and concerns about what might occur if PSRB supervision and conditions were removed.

112.    By continuing jurisdiction over Plaintiff on this basis, the PSRB, acting under the standards embodied in OAR 859-030-0010(3)(b)(B), deprived Plaintiff of liberty without requiring a present causal nexus between Plaintiff's qualifying mental disorder and current substantial dangerousness, in violation of the Fourteenth Amendment.

113.    Defendant Bort, in her official capacity, is responsible for implementing, administering, and enforcing the PSRB's rules and standards, including OAR 859-030-0010(3)(b)(B). Unless enjoined, Defendant will continue to enforce and apply this unconstitutional causal-nexus standard to Plaintiff in future PSRB jurisdictional reviews and decisions.

114.    Defendant's continued enforcement and application of OAR 859-030-0010(3)(b)(B) to Plaintiff creates an ongoing and real risk that Plaintiff will again be subjected to continued PSRB custody and custodial conditions based on non-qualifying factors and speculative concerns, rather than on present disorder-linked dangerousness, in violation of substantive due process.

28 - SECOND AMENDED COMPLAINT

EXHIBIT 2

115.    Consistent with *Ex parte Young,* 209 U.S. 123 (1908), Plaintiff does not seek money damages under this Count. Plaintiff seeks only prospective declaratory and injunctive relief to prevent future violations of their constitutional rights.

116.    Plaintiff is entitled to a declaration that OAR 859-030-0010(3)(b)(B) is unconstitutional on its face and as applied to Plaintiff because it fails to require a present causal nexus between a qualifying mental disorder and current substantial dangerousness as a condition of continued PSRB jurisdiction, in violation of the Fourteenth Amendment.

117.    Plaintiff is further entitled to an injunction prohibiting Defendant Bort, in her official capacity as Executive Director of the PSRB, and her successors, from applying OAR 859-030-0010(3)(b)(B) or any materially similar non-causal standard to Plaintiff in future PSRB jurisdictional reviews and discharge decisions.

118.    Plaintiff is also entitled to an injunction requiring that Plaintiff receive a new PSRB jurisdictional review conducted by a neutral and detached decision-maker applying a constitutional causal-nexus standard consistent with ORS 161.346(1)(a) and *Foucha v. Louisiana*, 504 U.S. 71 (1992), in which the decision-maker must determine whether Plaintiff is presently a substantial danger to others because of a qualifying mental disorder and, if not, must direct that PSRB jurisdiction be terminated or otherwise adjusted in a manner consistent with constitutional requirements, with any change in Plaintiff's custody status flowing from that new review rather than from a direct federal order of release. This form of prospective relief is consistent with *Wilkinson v. Dotson*, 544 U.S. 74 (2005), and *Skinner v. Switzer*, 562 U.S. 521 (2011), which permit § 1983 plaintiffs to obtain new procedures without necessarily securing immediate release, and with due process requirements that such liberty-affecting decisions be made by a neutral

29 - SECOND AMENDED COMPLAINT

EXHIBIT 2

and detached decision-maker, as recognized in *Morrissey v. Brewer*, 408 U.S. 471 (1972), *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), and *Vitek v. Jones*, 445 U.S. 480 (1980).

119.    The prospective declaratory and injunctive relief sought in this Count would require Defendants to use lawful standards and procedures in future decision-making. Any change to Plaintiff's custody status would result, if at all, from PSRB's future application of those corrected standards, not from a direct federal order of immediate discharge.

## VII. PRAYER FOR RELIEF

1. **Declaratory Relief**

    a.  Declare that OAR 859-030-0010(3)(b)(B), as currently written and implemented, violates the Fourteenth Amendment on its face and as applied to Plaintiff because it permits continued PSRB jurisdiction without a constitutionally adequate causal nexus between a qualifying mental disorder and current substantial dangerousness, as required by ORS 161.346(1)(a) and substantive due process principles reflected in *Foucha v. Louisiana*, 504 U.S. 71 (1992).

    b.  Declare that Defendants' continued enforcement and application of OAR 859-030-0010(3)(b)(B), and the weakened causal-nexus framework it embodies, in Plaintiff's case violates Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134, by causing unjustified segregation on the basis of disability and denying Plaintiff services, programs, and activities in the most integrated setting appropriate to their needs, as recognized in *Olmstead v. L.C.*, 527 U.S. 581 (1999).

2. **Injunctive Relief**

EXHIBIT 2

a. Enjoin Defendant Bort, in her official capacity as Executive Director of the Psychiatric Security Review Board, Defendant PSRB, and their officers, agents, employees, and successors from applying OAR 859-030-0010(3)(b)(B), or any materially equivalent weakened causal-nexus standard that fails to require present disorder-linked dangerousness, to Plaintiff in future PSRB jurisdictional reviews, discharge decisions, and related proceedings.

b. Order Defendants to ensure that Plaintiff receives a new PSRB jurisdictional review before a neutral and detached decision-maker that:

    i. Applies a constitutionally valid causal-nexus standard consistent with ORS 161.346(1)(a) and *Foucha v. Louisiana*, 504 U.S. 71 (1992), including a determination whether Plaintiff is presently a substantial danger to others because of a qualifying mental disorder; and

    ii. Complies with Title II's integration mandate by considering and giving effect to services, programs, and placements in the most integrated setting appropriate to Plaintiff's needs, consistent with the professional judgment of Plaintiff's treatment providers and *Olmstead v. L.C.*, 527 U.S. 581 (1999).

c. Grant any additional prospective declaratory or injunctive relief the Court deems necessary and appropriate to bring the standards and procedures governing Plaintiff's PSRB jurisdiction into compliance with the Fourteenth Amendment, 42 U.S.C. § 1983, and Title II of the ADA.

3. **Explicit Limitations on Relief**

a. Plaintiff does not seek monetary damages in this action.

31 - SECOND AMENDED COMPLAINT

EXHIBIT 2

b.  Plaintiff does not seek an order from this Court directing their immediate

discharge from PSRB jurisdiction, nor an order that directly shortens the

maximum duration of their custody. All relief requested is prospective,

declaratory, and injunctive, and is aimed at the standards and procedures that will

govern future PSRB decision-making in Plaintiff's case, consistent with *Ex parte*

*Young*, 209 U.S. 123 (1908), *Wilkinson v. Dotson*, 544 U.S. 74 (2005), and

*Skinner v. Switzer*, 562 U.S. 521 (2011).

DATED: _____, 202_.


Respectfully submitted,


s/ *Preston Berman*
PRESTON BERMAN
2600 Center St. NE
Salem, OR 97301-2669
Telephone: (503) 947-3764

Plaintiff, appearing Pro Se

32 - SECOND AMENDED COMPLAINT

EXHIBIT 2

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

### Form 25. Certificate of Service for Paper Filing

**9th Cir. Case Number(s)** No. 25-7646

**Case Name** Berman v. Psychiatric Security Review Board, et al.

I certify that I served on the person(s) listed below, either by mail or hand delivery, a copy of the Opening Brief and any attachments.

**Signature**  <u>s/ *Preston Berman*</u>          **Date**  <u>December 16, 2025</u>

| Name | Address | Date Served |
|---|---|---|
| Psychiatric Security Review Board | Oregon Department of Justice<br>100 SW Market St.<br>Portland, OR 97201 | 12/16/25 |
| Alison Bort, *in her official capacity as Executive Director of the Oregon Psychiatric Security Review Board* | Oregon Department of Justice<br>100 SW Market St.<br>Portland, OR 97201 | 12/16/25 |

***Mail this form to the court at:***

Clerk, U.S. Court of Appeals for the Ninth Circuit, P.O. Box 193939, San Francisco, CA 94119-3939